**In re CONSULTING ACTUARIAL PARTNERS, LIMITED PARTNERSHIP, Debtor.**

**CONSULTING ACTUARIAL PARTNERS, LIMITED PARTNERSHIP, Plaintiff,**

v.

**DESCAP PLANNING, INC., (On Its Own Behalf and As Limited Partner of Consulting Actuarial Partners, Limited Partnership), Defendant.**

Bankruptcy No. 87 B 20128.
87 ADV. 6026.

United States Bankruptcy Court,
S.D. New York.

April 22, 1987.

Reich and Reich, White Plains, N.Y., for plaintiff; Lawrence R. Reich, and John Philbin, of counsel.

Charles H. Weintraub and Ruskin, Schlissel, Moscou, Evans and Faltischek, P.C., New York City, for Descap Planning, Inc., et al.; Charles H. Weintraub, and David Lazer, of counsel.

## DECISION ON MOTION FOR PRELIMINARY INJUNCTION AND CROSS–MOTION TO DISMISS FOR LACK OF GOOD FAITH OR ABSTENTION

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor, Consulting Actuarial Partners, Limited Partnership, filed with this court its petition for relief under Chapter 11 of the Bankruptcy Code on March 31, 1987. The debtor is a limited partnership consisting of one general partner, American Actuarial Associates ("AAA") and one limited partner, Descap Planning, Inc. ("Descap"). A preliminary injunction is sought by the debtor pursuant to Fed.R. Civ.P. 65 and Bankruptcy Rule 7065 against its limited partner, Descap, in connection with an adversary proceeding brought by the debtor against Descap. In the adversary proceeding, the debtor seeks an order directing the following relief:

1. Requiring the Defendant to turn over all partnership property in its possession, custody or control and render an account of its receipt and disposition of all partnership property;

2. Enjoining the Defendant from interfering with those business and account relationships of the Plaintiff previously assigned to the Plaintiff; and

3. Compelling the Defendant to turn over to the partnership immediately upon receipt all future assets of the Plaintiff which it may possess or have in its custody or control. . . .

The preliminary injunctive relief which the debtor now seeks relates to Descap's alleged withholding or diverting of commissions, business, fees and funds which the debtor claims as property of the estate within the meaning of 11 U.S.C. § 541. The specific conduct attributable to Descap which the debtor contends should be preliminarily enjoined is delineated in the debtor's application as follows:

1. Referral of CONSULTING ACTUARIAL PARTNERS, LIMITED PARTNERSHIP ("CAP") business to competitors;

2. Diversion of insurance sales from CAP to insurance companies with which Defendant DESCAP is affiliated;

3. Withholding or diverting commissions or other insurance compensation;

4. Withholding or diverting any investment commissions or other compensation from CAP;

5. Any further, withholding or diversion from the partnership of fees;

6. Any further unauthorized discussions with clients regarding fee reductions and waivers; and

7. Directing all funds held and received in the future which are claimed by the General Partner to be Partnership funds. . . .

As the defendant in the adversary proceeding, Descap countered with an order to show cause seeking a dismissal of the debtor's Chapter 11 case pursuant to 11 U.S.C.

§ 1112(b) and § 305(a) because of an alleged bad faith filing, or in the alternative, for an order abstaining from hearing the adversary proceeding in accordance with 28 U.S.C. § 1334(c)(1) and (2).

## FACTS

1. Prior to the filing of its Chapter 11 petition on March 31, 1987, the debtor engaged in the design, administration and servicing of welfare, pension and other deferred compensation plans and the sale of insurance and investment products in conjunction with such compensation plans.

2. The debtor is a limited partnership formed pursuant to the laws of the State of New York and the Uniform Limited Partnership Act. The limited partnership agreement was signed on April 1, 1986 by Craig A. Miller, as president of American Actuarial Associates, Inc. ("AAA"), the general partner, and Michael Cammarata, as president of Descap Planning, Inc. ("Descap"), the limited partner.

3. The limited partnership agreement states that the office of the partnership shall be at 200 Motor Parkway, Hauppauge, New York. The agreement provides that the debtor partnership may maintain additional offices. When the debtor filed its Chapter 11 petition it listed its business office as 720 White Plains Road, Scarsdale, New York.

4. Prior to the formation of the debtor partnership in April of 1986, the limited partner, Descap, had been engaged in the business of financial planning, which included financial counseling and planning, estate planning and management, pension plan servicing and administration. Descap's business office was located at 200 Motor Parkway Hauppauge, New York, the same address which was listed for the debtor in the limited partnership agreement.

5. Before the debtor was formed as a limited partnership, its general partner, AAA, was engaged in the primary business of servicing and administering Welfare, pension and other deferred compensation plans. The office address for AAA, as stated in the limited partnership agreement, is 720 White Plains Road, Suite 300, Scarsdale, New York.

6. During 1985, Descap contracted out its pension plan administration and management functions to the actuarial firm of Miller & Miller. Craig A. Miller, the president of AAA was one of the partners and his brother was the other. Thereafter, negotiations ensued between Descap and Miller & Miller for the purpose of forming a partnership to engage in the design, administration and servicing of welfare, pension, and other deferred compensation plans and the sale of insurance and investment products in conjunction with such plans.

7. During the course of such negotiations, Miller & Miller expressed their intention that AAA would be established to perform the work required of the general partner instead of Miller & Miller. It was agreed that AAA would be the general partner of the debtor and Descap would be the limited partner. The name of the partnership was to be Consulting Actuarial Partners.

8. In accordance with the limited partnership agreement, AAA, as the general partner, and Descap, as the limited partner, each contributed $5000 to the capital of the partnership. In addition, Descap contributed to the partnership its clientele of pension plans for administration by the limited partnership.

9. Pursuant to the terms of the limited partnership agreement, AAA and Descap agreed to share all of the net income generated by the pension income on a 50–50 basis. It was contemplated that the income to be derived by the debtor would include the various fees and commissions earned by Descap for placement of insurance and other products in conjunction with the pension plans to be serviced by the debtor. The limited partnership agreement also provides that Descap is to be paid $135,000 in fixed monthly payments as a sales expense allowance.

10. Subsequent to the formation of the debtor partnership in April of 1986, a dispute arose between the general partner,

AAA, and the limited partner, Descap with respect to the activities of each in furtherance of the partnership business. By letter dated February 9, 1987, AAA offered to purchase Descap's interests in the debtor partnership for $600,000. In accordance with the limited partnership agreement, the offeree is required within sixty days either to accept that offer or make a counter-offer which exceeds the value of the offer by at least ten percent.

11. On February 25, 1987, the principals of AAA and Descap had a meeting in the debtor's office at 200 Motor Parkway, Hauppauge, New York, at which time, according to Craig Miller, the president of the general partner, AAA, Descap evicted the debtor from the Hauppauge office. Mr. Miller said that only some of the partnership files and property could be removed by the end of the business day and that Descap seized and still has control of the bulk of the partnership property and files.

12. On February 25, 1987, the same day as the meeting in the Hauppauge office, the general partner, AAA, caused a summons and complaint to be issued in an action commenced in the Supreme Court of the State of New York, County of Westchester, entitled:

AMERICAN ACTUARIAL ASSOCIATES, INC., on its own behalf and as General Partner of Consulting Actuarial Partners, Ltd., Plaintiff,

against

DESCAP PLANNING INC., on its own behalf and as Limited Partner of Consulting Actuarial Partners, Ltd., Defendant.

13. In the Westchester County action, the general partner, AAA, sought the following relief:

1. That Defendant be enjoined from interfering with the business and account relationships of the CAP Partnership agreement; and,

2. That a Temporary Receiver be appointed to collect, discover and pay over the sums received, to be received, and to disburse to the CAP Partnership the sums in DESCAP's possession or received by DESCAP and due to CAP in accordance with the CAP Partnership agreement; and,

3. That an accounting be ordered of Defendant DESCAP in aid of the Receivership to determine the whereabouts of the sums due to the CAP Partnership from the confidential accounts and the whereabouts of the diverted business accounts of the CAP Partnership; and,

4. That an assessment be levied on DESCAP for the sums due to the CAP Partnership.

14. Pursuant to a verified complaint dated March 30, 1987, Descap commenced an action in the Supreme Court of the State of New York, County of Suffolk, against the general partner, AAA, and the debtor limited partnership, seeking a declaratory judgment that the offer of AAA to purchase the interest of Descap in the limited partnership is a nullity and of no force and effect.

15. The debtor does not have any employees of its own. Some of the personnel who participated in the debtor's business are employed by the limited partner, Descap. The other personnel, other than Craig Miller, were leased to the debtor by Professional Technologies Group, Inc. ("Protech"), which is an entity formed and controlled by Craig Miller, the president of the general partner, AAA. Mr. Miller's own services are leased to the debtor by another corporate entity, which he also controls, namely Actuaries International, Inc.

16. None of the debtor's leased personnel, other than Craig Miller, are licensed to sell insurance to pension accounts. None of the debtor's leased personnel are licensed to sell securities. The debtor's general partner, AAA, is not licensed to sell insurance or securities. To the extent that the debtor engaged in the sale of insurance or securities, such activities were performed by Descap personnel on behalf of the partnership.

17. After the general partner AAA and the limited Partner Descap split up on February 25, 1987 and each commenced a law suit against the other, the limited partner

Descap proceeded to resume its business of financial planning and continued to contact the clients which it had previously assigned to the debtor partnership. In fact, even before the rift between the parties on February 25, 1987, Descap was authorized by the debtor to act as a sales representative for the debtor and to deal with the clients in that capacity. Craig Miller testified that this authorization did not include the power to commit the debtor to financial terms with the clients.

18. It is not clear from the evidence as to whether Descap's activities with respect to the clients which it assigned to the partnership constitutes an interference with the debtor's business or a continuation of Descap's business, especially since the alleged interference includes the sale of insurance and securities, activities which neither the general partner, AAA, nor the employees leased to the debtor by Protech are licensed to perform. Apart from welfare, pension and deferred compensation services, Descap performs a wide variety of financial planning and management services for the clients assigned to the partnership from which compensation is derived by Descap and to which the debtor partnership is not entitled to share.

19. After Descap evicted the debtor and its employees from the Hauppauge office, the general partner, AAA, moved the principal office to its premises in Scarsdale, New York, where AAA continued to direct the operations of the partnership. Descap did not totally withdraw from the partnership activities because it was to their mutual business advantage to accommodate the partnership clients in view of the fact that they were also clients of Descap in its other financial planning areas. Therefore, Descap continues to cooperate with AAA in the servicing of partnership clients in order to collect commissions and fees earned from past performances.

20. The general partner, AAA, is presently directing the partnership's current and future business activities. AAA is a corporate shell, with no employees and very few tangible assets. Craig Miller, the president of AAA, testified that if the debtor or is unable to halt Descap from interfering in partnership business and from collecting commissions and fees claimed by the partnership, he will not continue to finance the leasing of personnel and other services to the debtor, in which case, the debtor will be unable to continue its business for lack of credit.

21. The debtor's petition reflects total liabilities of $1,108,236.25. However, the attached list of the debtor's twenty largest creditors lists total liabilities of $1,128,241.40. Included in this figure is the sum of $1,115,000 which is owed to three affiliates of the debtor which are controlled by Craig Miller, namely, Professional Technologies Group, Inc. ($400,000); Actuaries International, Inc. ($600,000); and American Actuarial Associates, Inc. ($100,000). Thus, the debtor's net non-insider, non-affiliated indebtedness totals $13,241.40 of which $5,000.00 represents the claim of Siegel & Godt, Esqs. which claim has been waived.

22. The petition lists total assets of $1,954,089.30. Included in these assets is the figure of $1,900,000 which the debtor claims is due from its limited partner, Descap. Hence, the debtor's net non-insider assets total $54,089.30, with the result that the debtor's net non-insider, non-affiliated assets exceed its non-insider indebtedness by $45,847.90.

23. Although the debtor was formed and existed for the purpose of providing financial services in connection with welfare, pension and other deferred compensation plans maintained by clients of Descap which it assigned to the partnership, any future activities by the debtor in this area will be restricted because of the debtor's dispute with Descap. Accordingly, any reorganization of the debtor must be structured around the remaining general partner, AAA, which is a shell corporation with no employees and virtually no assets. The debtor's major asset consists of its disputed claim against Descap which formed the basis for the debtor's lawsuit against Descap in the New York Supreme Court, Westchester County.

## DISMISSAL

The debtor's survival depends upon whether or not Descap can be enjoined from pursuing the business and clients which it had previously assigned to the partnership and also whether or not Descap should be directed to account for commissions and fees which the debtor contends are property of this estate, as distinguished from income attributable to Descap's own business activities. However, the debtor is attempting to continue in business and its activities involve more than relying exclusively upon its claim against Descap. Accordingly, this situation is distinguishable from those cases where the debtor's *raison d'etre* consisted of the pursuance of a claim against another entity. *In re Winshall Settlor's Trust,* 758 F.2d 1136 (6th Cir.1985); *In re D & F Meat Corp.,* 68 B.R. 39, 41, 15 B.C.D. 382, 383 (Bankr.S.D.N.Y.1986); *In re Golden Ocala Partnership,* 50 B.R. 552, 557 (Bankr.M.D.Fla.1985).

Descap's primary contention is that the debtor's Chapter 11 case should be dismissed pursuant to 11 U.S.C. § 1112(b) for lack of good faith. Although bad faith is not one of the ten grounds for dismissal delineated in 11 U.S.C. § 1112(b), the courts have recognized a debtor's lack of good faith as sufficient cause for dismissal. *State of Idaho Dept. of Lands v. Arnold (In re Arnold),* 806 F.2d 937, 939 (9th Cir.1986); *Little Creek Development Co. v. Commonwealth Mortgage Corp. (In re Little Creek Development Co.),* 779 F.2d 1068, 1071–73 (5th Cir.1986) (The debtor filed Chapter 11 to prevent a mortgagee's foreclosure on the debtor's only asset); *In re Winshall Settlor's Trust,* 758 F.2d at 1137 (Debtor had no assets and no ongoing business, but filed Chapter 11 to preserve a chose in action); *Albany Partners, Ltd. v. W.P. Westbrook, Jr. (In re Albany Partners, Ltd.),* 749 F.2d 670, 673–74 (11th Cir.1984) (Chapter 11 petition filed by partnership on the eve of a foreclosure sale to save the partnership's major asset when there was no realistic chance of successfully reorganizing). In determining whether or not a Chapter 11 petition was filed with good faith lacking, the courts have focused on evidence of an intent to abuse the judicial process and the purposes of the reorganization provisions. *The Travelers Insurance Company v. Pikes Peak Water Company (In re Pikes Peak Water Co.),* 779 F.2d 1456, 1460 (10th Cir.1985) (Good faith was defined as the existence of realistic prospects for an effective reorganization where the petition was not filed solely for delay); *Albany Partners, Ltd. v. W.P. Westbrook, Jr. (In re Albany Partners, Ltd.),* 749 F.2d at 674 ("when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights ..."). The concept of good faith as a prerequisite in a Chapter 11 case was discussed in *In re Winshall Settlor's Trust,* 758 F.2d at 1137, as follows:

Factors relevant in examining whether a Chapter 11 petition has been filed in good faith include whether the debtor had any assets, whether the debtor had an ongoing business to reorganize, and whether there was a reasonable probability of a plan being proposed and confirmed. *Id.* [*In re Dolton Lodge Trust No. 35188,* 22 B.R. 918 Bankr.N.D.ILL. 1982)] at 923; *see In re Eden Associates,* 13 B.R. 578, 585 (Bankr.S.D.N.Y. 1981) ("The debtor, with no assets, no bona fide creditors and no business, cannot effectively rehabilitate its enterprise...."); *see also In re Tinkoff,* 141 F.2d 731 (7th Cir.1944) (mortgage foreclosure proceedings in state court were valid and equity of redemption expired; debtor had no interest in property for which it sought to provide arrangement and dismissal of petition was proper).

■ Generally, a lack of good faith in filing a Chapter 11 petition has reference to conduct that might be tantamount to a fraud on the court. Thus, one of the common examples of lack of good faith is the so-called new debtor syndrome. This phenomenon has been described as the:

formation of a new entity for the purpose of filing a bankruptcy petition; foreclosure is threatening with respect to the assets in question, the only creditors

affected are those threatening fore-closures; few, if any, unsecured creditors and no other creditor pressure; no ongoing operations or employees other than the controlling participants; no cash flow; the primary function of the debtor is to resist foreclosure as to the isolated assets held by the new debtors.

3 Norton, Bankr. L & Prac., § 56.03, (1986 Supp. p. 16). Although many of the quoted factors are present in this case, the debtor, Consulting Actuarial Partners, is not a new entity which was formed for the purpose of filing a Chapter 11 petition. Thus, this case is distinguishable from the facts in *In re Southern California Sound Systems, Inc.*, 69 B.R. 893, 898 (Bankr.S.D.Cal.1987) "[w]here the sole objective to be achieved by filing for relief by a *not-yet operational entity* is to reject a hastily-formed contract in order to avoid the state law remedy of specific performance.... Here, the debtor is attempting to use its rejection power to create a business rather than preserve one." (Emphasis added) In the instant case, the debtor filed its Chapter 11 petition in order to maintain its existence and to prevent a close-down of credit by Craig Miller, the president of its general partner, who testified that he did not want to throw good money after bad if the debtor is unsuccessful in the assertion of its claims against Descap. Moreover, unlike the situation in *In re Ofty Corp.*, 44 B.R. 479, 12 B.C.D. 644 (Bankr.D.Del.1984), where the majority of the debtor's creditors were insiders, and the Chapter 11 petition was filed to thwart the role of a state-court receiver to liquidate the mismanaged business, here, the first state court action involving the instant debtor was commenced *by* the debtor's general partner, AAA, against Descap. The lawsuit which AAA commenced in Westchester County was brought on behalf of itself and the debtor. The debtor certainly does not wish to reject the claims asserted in the state court action, especially since the debtor reasserted essentially the same claims in its adversary proceeding against Descap in this case.

 It is too early to conclude that the debtor is defunct and incapable of reorga-nizing. In *In re D & F Meat Corp.*, 68 B.R. at 41, this court noted that there was no assurance that the debtor could make a phoenix-like emergence from its ashes even if it were to succeed in collecting on its fire insurance claim. In the instant case, on the other hand, if the debtor were to prevail against Descap, it would have sufficient assets and property to continue its ongoing business. The debtor is still operational and is attempting to function in the business of servicing and administering welfare, pension and other deferred compensation plans. Accordingly, dismissal of the Chapter 11 petition is not warranted at this time.

### ABSTENTION

In determining whether or not this court should abstain from trying the adversary proceeding commenced by the debtor against Descap, consideration must be given to the language of 28 U.S.C. § 1334(c)(2), which governs the subject of mandatory abstention from the exercise of bankruptcy jurisdiction:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

 As noted by this court in *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development Fund Co., Inc. (In re Allied Mechanical and Plumbing Corp.)*, 62 B.R. 873, 877–

78 (Bankr.S.D.N.Y.1986), this statutory mandate consists of six factors. First, a party in a proceeding must make a timely motion for abstention by the court. This factor was satisfied when Descap cross-moved for abstention in response to the debtor's motion for a preliminary injunction promptly after the commencement of the debtor's adversary proceeding for a permanent injunction and an accounting for commissions and fees. Second, the adversary proceeding must be "based upon a state law cause of action." Here the debtor's claims are based on partnership and contract law as applied under the laws of the State of New York. Third, the adversary proceeding must be "related to" this Title 11 case but it must not "arise under" the Title 11 case or "arise in" the Title 11 case. This means that the right to relief in the adversary proceeding must not depend upon the application or construction of bankruptcy law as expressed in Title 11, although the outcome of the adversary proceeding must have an effect on the estate being administered in the bankruptcy court. *Turner v. Ferrin (In re Turner)*, 70 B.R. 486, 489 (Bankr.D.Mont.1987); *U.I.U. Health and Welfare Fund v. Levit (In re Futura Industries, Inc.)*, 69 B.R. 831, 834 (Bankr.E.D.Pa.1987). The debtor's adversary proceeding in the instant case does not depend upon the application of bankruptcy law, although the outcome will affect the administration of this case. Hence, it is "related to" this Title 11 case, although it does not "arise under" or "arise in" a Title 11 case. Thus, in *Turner v. Ferrin (In re Turner)*, 70 B.R. at 486, it was argued that an adversary action seeking rescission of a contract was inextricably intertwined with the prospects of reorganization and should be regarded as arising in a Chapter 11 case. The court concluded that the right to relief did not depend upon bankruptcy law and that the court was obliged to recognize the mandatory abstention requirement in 28 U.S.C. § 1334(c)(2). Fourth, the adversary proceeding must be one which could not have been commenced "in a court of the United States absent jurisdiction under this section [§ 1334]." In other words, there must be an absence of federal court subject matter jurisdiction over the claims asserted in the adversary proceeding other than the existence of bankruptcy jurisdiction. This factor is present here because the debtor's claims based upon violations of partnership law and its causes of action for an accounting and breach of the partnership agreement could not be asserted against Descap in a federal court if the debtor had not commenced this Chapter 11 case. *Braucher v. Continental Illinois National Bank and Trust Company of Chicago (In re Illinois-California Express, Inc.)*, 50 B.R. 232, 241 (Bankr.D.Colo.1985) ("It is apparent that the breach of contract and declaratory judgment counts are state law causes of action which could not be commenced in a federal court absent Section 1334"). Fifth, an action must have been commenced and pending in a state forum of appropriate jurisdiction. The general partner in this case, AAA, commenced a prepetition action against Descap on behalf of itself and on behalf of the debtor as its general partner. This action is pending in the Supreme Court of the State of New York, Westchester County. The state case seeks essentially the same relief as is requested in the adversary proceeding in this case. Although the nominal plaintiff in the state case is the general partner, rather than the debtor partnership, the two entities are virtually indistinguishable because the general partner is the only remaining active party in the partnership now that the limited partner, Descap, has withdrawn from participating in partnership business and is being sued as a defendant in the state action. Sixth, the pending state court action must be one that "can be timely adjudicated" in that forum. A naked assertion that the matter can be timely adjudicated in the state court, without more, is insufficient to satisfy this requirement. *U.I.U. Health and Welfare Fund v. Levit (In re Futura Plumbing Industries, Inc.)*, 69 B.R. at 834; *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development Fund Co., Inc. (In re Allied Mechanical and Plumbing Corp.)*, 62 B.R. at 878. Here, Descap has shown that the pending state action is ac-

tively proceeding towards a timely adjudication. The state court has already denied the debtor's application for the appointment of a receiver and has under advisement an application for preliminary injunction which is substantially similar. The fact that equitable relief is sought in the state suit and that a jury trial is not involved, is further substantiation that the case can be tried timely because "it is a judge case only, being one in equity." *Turner v. Ferrin (In re Turner)*, 70 B.R. at 490. Thus, all six factors for mandatory abstention expressed in 28 U.S.C. § 1334(c)(2) have been established.

■■■ Even if this court were not compelled by 28 U.S.C. § 1334(c)(2) to abstain from hearing the debtor's adversary proceeding against Descap, it would be guided by principles of comity to respect a pending unresolved state law suit and would not exercise federal judicial authority in the disregard of the comity between the state courts and the federal courts. This discretionary absention is authorized under 28 U.S.C. § 1334(c)(1) and is intended "to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.*, —— U.S. ——, —— fn. 9, 107 S.Ct. 1519, 1526 fn. 9, 95 L.Ed.2d 1 (1987). In view of the fact that the debtor originally chose to pursue its remedies against Descap in the New York Supreme Court, Westchester County, "there is no compelling reason why the plaintiff's choice of forum should be changed with respect to the resolution of a purely state law dispute." *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development Fund Co., Inc., (In re Allied Mechanical and Plumbing Corp.)*, 62 B.R. at 878.

■■■ The bankruptcy court has authority to comply with the mandatory abstention obligation expressed in 28 U.S.C. § 1334(c)(2) because abstention involves a matter concerning the administration of the estate and is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development Fund Co., Inc., (In re Allied Mechanical and Plumb-*

*ing Corp.)*, 62 B.R. at 878; *Marine Bank Appleton, N.A. v. Mill-Craft Building Systems, Inc. (In re Millcraft Building Systems, Inc.)*, 57 B.R. 531, 535 (Bankr.E. D.Wisc.1986).

In view of the fact that the court is compelled to abstain from hearing the debtor's adversary proceeding against Descap, the court will not address the merits of the debtor's application for a preliminary injunction. Instead, the debtor's entitlement to a preliminary injunction will be left for determination by the state court where the same issues are pending.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties in this case in accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a).

2. Descap's motion pursuant to 11 U.S.C. § 1112(b) and § 305(a) to dismiss the debtor's Chapter 11 petition for lack of good faith is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). This motion is denied because the debtor does possess an ongoing business that is in financial distress and which properly may be the subject of a Chapter 11 reorganization.

3. Descap's motion for mandatory abstention, as directed under 28 U.S.C. § 1334(c)(2), is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and is granted. All of the conditions required for mandatory abstention delineated under 28 U.S.C. § 1334(c)(2) have been shown to exist in this case with respect to the debtor's adversary proceeding against Descap. Nonetheless, this court should also abstain from hearing the debtor's adversary proceeding against Descap in accordance with the discretionary abstention principle expressed in 28 U.S.C. § 1334(c)(1) in order not to disregard the comity between this court and the state court in which the debtor's general partner's prepetition action for similar relief against Descap is still pending.

4. In light of the court's abstention with respect to the debtor's adversary proceeding against Descap, the court will not decide the debtor's motion for a preliminary

injunction against Descap, because such relief in this court is now moot.

SETTLE ORDER on notice.