**In re AHT CORPORATION, et al., Debtors.**

**AHT Corporation, Plaintiff,**

v.

**Bioshield Technologies, Inc., AHT Acquisition Corp., Timothy C. Moses, Jacques Elfersy, Scott Parliament, and Geoffrey Faux, Defendants.**

**Bankruptcy No. 00 B 14446(ASH).
Adversary No. 00–2935A.**

United States Bankruptcy Court, S.D. New York.

June 13, 2001.

Klestadt & Winters, LLP, by Tracy L. Klestadt New York City, Gravel and Shea, by Andrew D. Manitsky, Robert F. O'Neill, Burlington, VT, for AHT Corporation.

Roosevelt, Benowich & Lewis, LLP, by Leonard A. Benowich, Kenneth M. Lewis, White Plains, NY, Sims, Moss, Kline & Davis, LLP, Atlanta, GA, for Defendants.

### DECISION DENYING MOTION TO ABSTAIN

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

Before me is a motion to abstain from hearing this adversary proceeding brought by debtor/plaintiff AHT Corporation ("AHT" or "debtor") against defendants Bioshield Technologies, Inc. ("Bioshield"), AHT Acquisition Corp., a wholly-owned subsidiary of Bioshield ("AHT Acquisition") and three individual defendants alleged to have been directors and controlling persons of Bioshield.

The adversary proceeding was filed on or about November 24, 2000. Defendants did not initially answer, but filed a motion to dismiss the complaint. The motion to dismiss was denied by Judge Connelly, to whom the case was initially assigned, at the conclusion of oral argument at a hear-

ing on January 23, 2001. Upon Judge Connelly's retirement, the case was transferred to me.

Defendants filed answers with affirmative defenses and counterclaims. Plaintiff has filed a reply and defenses to the counterclaims. On February 6, 2001 counsel for the parties completed and the Court thereafter signed a Scheduling Order setting June 15, 2001 as the deadline to complete discovery, June 27, 2001 as the deadline to file a joint pretrial order and trial briefs and July 3, 2001 as the date for a final pretrial conference. On May 29 I granted the parties' request to modify the Scheduling Order to provide for a discovery deadline of September 14 with Joint Pretrial Order to be filed October 1, 2001.

### Jurisdiction

The Court has jurisdiction over the subject matter of this controversy under 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of reference signed by Acting Chief District Judge Ward on July 10, 1984. The instant motion is a core proceeding under 28 U.S.C. § 157(b)(2).

### Caveat

As in any motion to abstain, the factual predicate must be drawn from the allegations of the pleadings, mainly the complaint, and so it is here. The following brief recitation of facts and events, which is necessary for purposes of background, is based on the complaint and submissions of counsel. My statements here obviously do not constitute findings of fact, nor are any conclusions expressed here intended to constitute law of the case except to the extent strictly necessary to decide this motion to abstain. Nothing I say in this ruling can be construed as expressing or even intimating any view on my part as to any of the merits of the claims, counterclaims, defenses, objections or positions of the parties that may come before me in this proceeding. The parties would make a great mistake to think, or to argue, to the contrary. Assuming that I try this case (and I make no such assumption at this time), I shall have no view as to the merits or the outcome of any issue until I have heard and read the evidence, read the briefs and heard the arguments of counsel.

I express these caveats, perhaps in an excess of caution, because of references in the parties' memoranda to comments by this Court at earlier stages of the proceedings. For example, defendants' Memorandum at page 7 quoted a comment by Judge Connelly at the January 23 hearing, and defendants asserted that "[t]his Court has recognized that it will be unable to conduct the jury trial in this Adversary Proceeding" (*id.* at 17), presumably referring to some comment I made in the course of oral argument on March 1 at a time when I was engaging in dialogue with counsel to thresh out the issues. Similarly, plaintiff quoted certain comments by Judge Connelly at a hearing in November on an unrelated issue (Memorandum 5). I do not intend anything I say in this ruling to be misinterpreted by counsel or their clients, or misquoted or quoted out of context before any other bankruptcy judge or any reviewing court.

### Background

On June 30, 2000 AHT, Bioshield and AHT Acquisition entered into a Merger Agreement pursuant to which AHT was to become a wholly-owned subsidiary of Bioshield, and AHT shareholders were to receive Bioshield common stock in accordance with a formula. Plaintiff alleges that the defendants committed a variety of acts of serious wrongdoing in connection with the Merger Agreement and that the corporate defendants breached the Merger Agreement.

On September 7, 2000 AHT gave notice to Bioshield that due to Bioshield's material breaches AHT was terminating the Merger Agreement, and the same day AHT commenced an action against the same defendants as those named in this adversary proceeding in the Georgia State Court (the "State Court Action"). The defendants filed counterclaims in the State Court Action. Settlement negotiations ensued, resulting in a negotiated, contingent settlement with three interrelated aspects, namely, (i) a new so-called Asset Purchase Agreement dated September 22, 2000 under which Bioshield would acquire the assets and business of AHT at a lower price than that contemplated under the June 30 Merger Agreement, (ii) settlement of the claims and counterclaims in the State Court Action and (iii) the simultaneous filing on September 22, 2000 by AHT of a voluntary petition under Chapter 11 in this Court.

The parties did in fact execute the Asset Purchase Agreement, and AHT did in fact file its Chapter 11 petition in this Court, both on September 22. But Bioshield did not purchase the assets and business of the debtor. Because it was operating post-petition at a deficit, the debtor eventually was forced to terminate operations and relinquish its assets to its secured creditor. This left the debtor with a fund of cash and this adversary proceeding as its only assets of any substance.

## I. *The governing law*

There is no dispute as to the law that determines the outcome of this motion. The governing statute is 28 U.S.C. § 1334(c). Section 1334(c) has two subsections. Subsection (1) concerns permissive abstention and states:

(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Subsection (2) provides for so-called mandatory abstention and states:

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

■■■ Whether to abstain or not under subsection (1) is a matter for the sound discretion of the bankruptcy court. See, *In re Masterwear Corp.*, 241 B.R. 511, 520 (Bankr.S.D.N.Y.1999); *In re Consulting Actuarial Partners, LP*, 72 B.R. 821, 829 (Bankr.S.D.N.Y.1987). For the reasons set forth in my decision in *In re Texaco, Inc.*, 182 B.R. 937, 946–947 (Bankr. S.D.N.Y.1995) and the authorities there cited, and because of the particular circumstances present in this case as amplified in point III, below, I decline to abstain under subsection (1).

There are six statutory prerequisites for abstention under subsection (2). It is clear from the statute itself that all six must be found for abstention to be mandatory. The six requirements are as follows:

(1) The motion must be "timely."

(2) The proceeding must be "based upon a State law claim or State law cause of action."

(3) The claim or cause of action must not be one either "arising *under* title 11 or arising *in* a case under title 11" (em-

phasis supplied). This clause actually comprises two requirements, denoted by the underscored prepositions.

(4) The claim or cause of action must be such that it "could not have been commenced in a court of the United States absent jurisdiction under this section." Stated differently, there must be no basis for Federal subject matter jurisdiction (such as Federal question or diversity) other than that conferred under Section 1334.

(5) The State law claim or cause of action must be the subject of "an action [that] is commenced ... in a State forum of appropriate jurisdiction."

(6) Even if an action is commenced in a State forum, it must be found that the State court action "can be timely adjudicated."

*See, e.g., S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 708 (2d Cir.1995); *In re Thomson McKinnon Securities Inc.*, 161 B.R. 98, 100 (Bankr.S.D.N.Y.1993); *In re Consulting Actuarial Partners, LP*, 72 B.R. at 827.

 Although abstention under subsection (2) is mandatory in the sense that, if all six factors are found to be present, the Court "*shall* abstain from hearing such proceeding" (emphasis supplied), Congress necessarily vested in the bankruptcy court the discretion to determine factors (1) and (6). These factors, concerning timeliness, require the bankruptcy court to give appropriate consideration to the circumstances in the litigation before the court and the requirements of the Bankruptcy Code, Bankruptcy Rules and the special exigencies applicable in bankruptcy proceedings which are not present in litigation pending in other Federal courts or in State courts.

## II. *Application of the six requirements to the facts in this case*

### 1. *The requirement of a "timely motion"*

 Defendants argue that the motion is timely because it was made "at or before the time defendants [were] to serve and file their respective answers to the complaint." The motion to abstain was filed February 8, 2001, some 2–1/2 months after the complaint was filed and the day before defendants' long-extended deadline to answer. Putting aside this lengthy delay, defendants cannot claim to have made a "timely motion" to abstain after having utilized the substantive process of this Court on a matter going to the merits of the complaint by moving to dismiss. It would make a mockery of the "timely motion" requirement to permit defendants to litigate matters of substance on the merits in the bankruptcy court and, after receiving an adverse ruling, seek to transfer the litigation to a different venue. Section 1334(c) is subverted when it is employed as a litigation stratagem or tactic. The "timely motion" requirement precludes a defendant from essaying litigation in the bankruptcy court and, after a setback, invoking mandatory abstention under Section 1334(c)(2).

Prior cases have stood for the proposition that a party moves in a timely manner when "he or she moves *as soon as possible* after he or she should have learned the grounds for such a motion." *Novak v. Lorenz (In re Novak)*, 116 B.R. 626, 628 (N.D.Ill.1990) (emphasis supplied). *See also Waugh v. Eldridge (In re Waugh)*, 165 B.R. 450, 452 (Bankr.E.D.Ark.1994) ("lengthy delay, combined with the lack of any evidence that the motion could not have been filed earlier, renders the motion untimely"). Bringing the motion for abstention once their substantive motion to dismiss has been denied, does not show

that defendants have moved "as soon as possible." *Id.* Moreover, the motion is untimely because bringing it at this time further delays the court proceedings and the rights of the debtor after the motion to dismiss has already extended the time period for resolution of this case. *Paxton National Insurance Co. v. British American Associates (In re Pacor, Inc.)*, 72 B.R. 927, 932 (Bankr.E.D.Pa.1987), *aff'd*, 86 B.R. 808 (E.D.Pa.1987) ("Whether a motion is timely filed depends upon a variety of factors including whether the granting of the motion would prejudice or delay the rights of others").

### 2. The "State law claim" requirement

■ Section 1334(c)(2) is not applicable here because plaintiff's claims in this adversary proceeding are not based exclusively on State law. Plaintiff's seventh[1] cause of action for equitable subordination under 11 U.S.C. § 510(c) is based solely on the Bankruptcy Code and Federal common law related thereto. *See In re Poughkeepsie Hotel Associates Joint Venture*, 132 B.R. 287, 292 (Bankr.S.D.N.Y.1991) ("The notion of equitable subordination, as embodied in Code § 510(c), is peculiar to bankruptcy law and an issue which can only be decided in a bankruptcy setting").

Defendants' contention that Judge Connelly viewed the equitable subordination claim as "pretty tenuous in light of all the facts" (Defendants' Memorandum 7, quoting from the transcript of the January 23, 2001 hearing at 15) is unavailing, because the sixth cause of action alleges a valid Federal claim arising under the Bankruptcy Code. As I have endeavored to make clear (*see* Caveat, above), this Court will have no view on the merits of any of the parties' claims or defenses until all the evidence and argument has been presented to the Court.

It may be true, as defendants assert and plaintiff avers, that the equitable sub-ordination claim may be based on both post-petition and pre-petition conduct and may entail "a review of the very same facts which are in issue in the Georgia Action" (Defendants' Memorandum at 7). But this merely underscores the necessity of litigating all of the claims and defenses in this adversary proceeding in one forum, and the irrationality of attempting to bifurcate claims or defenses.

### 3A. The requirement of "not arising under title 11"

As shown in the preceding section, this requirement cannot be met because Count VII does arise "under title 11," to wit, 11 U.S.C. § 510(c). *See WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 606 (S.D.Tex. 1999) (" '[a]rising under' jurisdiction involves causes of action created or determined by a statutory provision of title 11").

### 3B. The requirement of "not arising . . . in a case under title 11"

Count II of the complaint alleges breach of the Asset Purchase Agreement. That Agreement was executed on September 22, 2000. The debtor filed its petition in this Court on the same date. Breach of that Agreement, if it occurred, could only have occurred post-petition. Consequently, Count II asserts a claim "arising in a case under title 11."

Defendants do not address the "not arising in" requirement of Section 1334(c)(2), arguing instead the non-issue of whether plaintiffs' claims are "core" proceedings under a quite different part of Title 28,

---

1. The complaint contains seven Counts. The seventh is misnumbered "Count VI." Herein-

after the second Count VI will be referred to as "Count VII."

Section 157(b) (*see* point IV, below). Defendants do assert that the Asset Purchase Agreement was pre-petition, perhaps intending to suggest that a post-petition breach of a pre-petition contract would not constitute a claim "arising in" a Chapter 11 case. No authority is offered to support such a contention. Post-petition conduct by a third party damaging a debtor and giving rise to a claim by the debtor against the third party, whether the claim is based upon State or Federal law, must necessarily and by definition be a claim "arising in" the Chapter 11 case. To conclude otherwise would distort the plain meaning of the statutory words.

Moreover, it is captious to suggest that the Asset Purchase Agreement, although signed immediately "pre-petition," can be considered an event somehow unrelated to the AHT bankruptcy. AHT's Chapter 11 filing was an integral, essential element of the Asset Purchase Agreement. The first two "Whereas" clauses recite:

WHEREAS, the Sellers plan to file voluntary petitions for relief ("Bankruptcy Petitions") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York, White Plains Division ("Bankruptcy Court");

WHEREAS, pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Sellers plan to continue in the operation of their businesses and the management of their assets and properties as debtors in possession.

The sixth and final "Whereas" clause makes clear that the key provisions of the Asset Purchase Agreement, including a contemplated sale under Section 363 of the Bankruptcy Code and debtor-in-possession financing under Section 364 of the Bankruptcy Code, are dependent upon and integral to AHT's Chapter 11 case:

WHEREAS the Sellers have agreed to a full and final compromise, settlement and release of all claims asserted in the Pending Litigation (the "Settlement") in consideration of the Buyers' agreement, *subject to* certain terms and conditions including *Bankruptcy Court approval,* (i) to purchase substantially all of the assets of the Sellers pursuant to this Asset Purchase Agreement ("Agreement") in a sale under section 363 of the Bankruptcy Code for an aggregate purchase price of $15,050,000 and (ii) to provide secured debtor-in-possession financing to the Sellers of up to $1,500,000 on the terms and conditions set forth in that certain DIP Financing, Escrow and Settlement Agreement between Buyers and Sellers of even date herewith ("DIP Financing Agreement") (emphasis supplied).

Countless provisions of the Asset Purchase Agreement contain references to the Bankruptcy Code or provisions demonstrating that the Agreement was integral to AHT's Chapter 11 case and the Chapter 11 case was integral to the Agreement. (*See, e.g.,* paragraphs 1.3, 1.5, 1.6, 1.18, 1.19, 1.20, 1.21, 1.22, 1.23, 1.24, 1.25, 1.42, 3, 4.1, 4.2, 6.4, 9.6, 9.7, 10.1, 10.2, 11, 11.1, 11.2, 11.3, 11.4, 12.5 [sic; the sequence in the Agreement proceeds from 11.4 directly to 12.5], 12.6, 14). Key substantive provisions of the Asset Purchase Agreement include paragraphs 1.23 and 1.24 and Exhibit A annexed to the Agreement, all concerning Bioshield's obligation to provide $1.5 million debtor-in-possession financing to the debtor; paragraph 3 stating that the parties "contemplated that the Purchase Price will be utilized in connection with a liquidating Plan of Reorganization which will, in general terms, provide for payment in full to all of the Debtors' creditors, whether secured or unsecured, and an as of yet undetermined distribution to the

Debtors' equity holders"; paragraph 9.6 entitled "Approval and Order of the Bankruptcy Court"; and paragraph 14 entitled "Governing Law and Waiver of Jury Trial." Paragraph 14 provides in full as follows:

14. ***Governing Law and Waiver of Jury Trial.*** This agreement shall be governed by, and construed and enforced in accordance with the laws of the State of New York. Buyers and Sellers agree that all actions and proceedings relating to the interpretation, enforcement or breach of this agreement shall be litigated in the United States Bankruptcy Court for the Southern District of New York, White Plains Division. Both parties hereto waive the right to a trial by jury in any such action or proceeding between Buyers and Sellers. Buyers submit to [t]he jurisdiction of said courts in any such action or proceeding.

■■■ Defendants' contention that this Court should abstain from hearing and determining this adversary proceeding under either subsection of 28 U.S.C. § 1334(c) is confounded by the corporate parties' agreement in paragraph 14 "that all actions and proceedings relating to the interpretation, enforcement or breach of this agreement shall be litigated in the United States Bankruptcy Court for the Southern District of New York, White Plains Division." This provision constitutes a waiver by the corporate defendants of any right to mandatory abstention.[2]

### 4. *The jurisdiction requirement*

The jurisdiction requirement is the only requirement of Section 1334(c)(2) which appears to be fully met in this case. *See In re Consulting Actuarial,* 72 B.R. at 828 ("there must be an absence of federal

court subject matter jurisdiction over the claims asserted in the adversary proceeding other than the existence of bankruptcy jurisdiction"). There is no Federal question basis for subject matter jurisdiction (other than Title 11) and there is no diversity jurisdiction because the debtor and AHT Acquisition are both Delaware corporations. It may be true that AHT Acquisition, a shell corporation wholly-owned by Bioshield and created for the sole purpose of acquiring AHT, could have been and presumably could still be dropped as a defendant. But the fact remains that it is a defendant now, and this motion must be decided based upon the facts as they exist now.

### 5. *The requirement that "an action is commenced"*

■■■ It is true that the State Court Action was commenced on September 7, 2000. It may also be true that Counts I, III, IV, V and VI of the complaint in the adversary proceeding are comprehended largely, if not entirely, in the complaint in the State Court Action.

But Counts II (breach of the Asset Purchase Agreement) and VII (equitable subordination) obviously are not asserted in the State Court Action and are not comprehended by the claims asserted in that Action. These two Counts are the most important in this adversary proceeding. The Asset Purchase Agreement apparently was intended to settle all claims which were asserted in the State Court Action and contemplated an exchange of releases in respect of the claims and counterclaims in the State Court Action. Thus, depending upon the evidence and the positions taken by the parties, it may be argued that the Asset Purchase Agreement may con-

---

**2.** There can be no doubt that subsection (2) can be waived by any party, since it is a

matter of choice whether or not to file a "timely motion."

stitute a bar to the claims and counter-claims which are asserted in the State Court Action. For reasons amplified in point III, below, Count II ought to be litigated in the Bankruptcy Court. And Count VII must be litigated in the Bankruptcy Court.

Accordingly, it cannot be said that the requirement of "an action is commenced" has been met in this case. *See, In re Nationwide Roofing and Sheet Metal, Inc.,* 130 B.R. 768, 779 (Bankr.S.D.Ohio 1991) (where different causes of action and different parties exist within the state court proceeding and the adversary proceeding, "the state court proceeding could not, if [the debtor] prevailed, provide the relief which [the debtor] could obtain in this adversary, nor would such relief be obtained against the same parties in both proceedings. As a result, the court concludes that the adversary in this court is a different 'action' than the state court proceeding. Accordingly, this adversary is NOT an action which has been previously commenced").

### 6. *The requirement of timely adjudication in the State Court Action*

The requirement of timely adjudication necessarily entails a comparison of the time required for litigation in the State Court Action as compared with the litigation schedule in this Court. Under the Amended and Final Scheduling Order, the parties must file a joint pretrial order and trial briefs by October 1, 2001, and this controversy will be ready for trial on that date. Unless a jury trial is required, the adversary proceeding will be tried to this Court in October or November, and a decision or proposed findings and conclusions will be rendered long before year-end. If a jury trial is required, it will be scheduled at the earliest possible date before a dis-trict judge, almost certainly before year-end.

Defendants have made no showing that the litigation can or will be timely dispatched in the State Court Action. Common experience in State and Federal trial courts would suggest that litigation in another court in the normal course would take many months (or even years) longer than in this Court even if the case is tried to a jury before a district judge.

### III. *Factors warranting denial of the motion*

There are a number of circumstances particular to this case which compel denial of the motion to abstain. Preliminarily, it should be noted that this adversary proceeding is not peripheral to the administration of this debtor's estate. Aside from a limited fund of cash, the claims asserted in this adversary proceeding constitute the debtor's only assets of substance.

Central to all of plaintiff's claims is Count II against Bioshield for breach of the Asset Purchase Agreement. The claim in Count II arose, if at all, within the context of this Chapter 11 case. The Asset Purchase Agreement by its terms is the essential element in this Chapter 11 case and requires Bankruptcy Court approval for all its essential provisions. Because of the centrality of the Asset Purchase Agreement to the Chapter 11 case, and vice versa, and because any claims or defenses arising under the Asset Purchase Agreement must necessarily have arisen in the course of the Chapter 11 case before this Court, there can be no question that all issues arising under or related to the Asset Purchase Agreement ought to be litigated in this Court. Even the viability of the pre-petition claims among the parties may depend upon interpretation and enforcement of the Asset Purchase Agreement, as defendants have asserted in their

answer and affirmative defenses that plaintiff's claims against the defendants arising pre-petition are barred by the Asset Purchase Agreement. Finally, in paragraph 14 of the Asset Purchase Agreement the corporate parties agreed that that Agreement should be construed and enforced in accordance with New York law and "that all actions and proceedings relating to the interpretation, enforcement or breach of this agreement shall be litigated in the United States Bankruptcy Court for the Southern District of New York, White Plains Division."

Similarly, Count VII of the complaint for equitable subordination under 11 U.S.C. § 510(c) must be litigated in this Court, and it cannot be litigated in the Georgia State Court.

A bankruptcy case is different from a lawsuit between one or more plaintiffs and defendants brought in a court of plenary jurisdiction. In such a lawsuit, the parties are the only ones affected by the litigation. If there is delay, the parties are the only ones harmed, or benefitted, by it. In many if not most courts of plenary jurisdiction, the parties are given wide latitude in terms of the time to be expended in pretrial practice, such as the pleadings, discovery proceedings, motion practice of all kinds, etc. Interlocutory appeals are permitted in many states (the record before me does not illuminate the practice in Georgia). In many courts of first instance, particularly state courts, there may be little if any judicial supervision or pressure to bring cases to trial expeditiously and court calendar practice or judicial assignment of cases may result in lengthy delay (again, defendants have made no effort to illuminate the rules or practice in Georgia).

By contrast, litigation in the bankruptcy court implicates the interests of a far broader spectrum of parties than the particular parties named in an adversary proceeding. In a bankruptcy case, whether liquidation under Chapter 7 or reorganization under Chapters 11 and 13, an adversary proceeding to determine claims by or against the debtor affects all parties in interest in the bankruptcy case, including all creditors and all equity holders in a corporate debtor. The normal delays incident to a lawsuit in a court of plenary jurisdiction are intolerable in a bankruptcy case where the rights of a host of parties in interest beyond the parties to the adversary proceeding itself may be affected and may be irrevocably compromised by delay. This is particularly true in a bankruptcy reorganization, where the reorganization process itself may be defeated simply by reason of delay in a particular adversary proceeding.

In this Chapter 11 case the factor of delay does not threaten the viability of the debtor's reorganization, because traditional business reorganization has already been precluded by events. But the possibility of uncontrolled delay and litigation costs most certainly does pose a threat to this debtor's right to have its day in court on its claims in this adversary proceeding, which constitute its only assets of substance. The debtor has a limited fund with which to pay administrative claims, including the costs of litigation. The estate cannot afford the potential costs attendant upon unrestrained delaying tactics, discovery disputes, motion practice and the like which common experience has shown are the often inevitable lot of litigants in many trial courts of general jurisdiction, whether State or Federal. Of course, it may be that the Georgia State Court might be able to try the issues which are capable of litigation in that court to a speedy conclusion, perhaps even by the end of the year. But that is a matter of dubious speculation, and neither the parties nor this Court would be in a posi-

tion to control that process. Nor can the debtor well afford the luxury of duplicative litigation of state law claims in the State Court Action and core jurisdiction claims in this Court—a wasteful and unsound procedure to be avoided wherever possible. Bifurcation of the claims is not an option where this Court has personal jurisdiction over all the parties, subject matter jurisdiction over all the claims, core jurisdiction with respect to some if not all claims and defenses between the debtor and Bioshield and, subject to further consideration and argument, the potential to hear, report and recommend, if not the power to hear and determine, the claims and defenses between the debtor and the individual defendants. As noted above, if necessary the entire case can be tried to a jury by a district judge, with Count VII to be decided by the district judge.

## IV. *Requirement (3) and the Non–Issue of "Core" Proceedings*

As previously noted, the third requirement of subsection (2) of Section 1334(c)— *i.e.,* that the State law claim be a claim "not arising under title 11 or arising in a case under title 11"—actually raises two separate issues. First, does the State law claim arise *"under* title 11?" Second, does the State law claim arise *"in* a case under title 11?" The issues are different, since a claim arising "under" Title 11 is not at all the same as a claim arising "in" a case under Title 11. As discussed under items 3A and 3B under point II, above, defendants' subsection (2) motion fails the "under" requirement because Count VII of the complaint does arise under Title 11, and the motion fails the "in" requirement because the breach of contract claim alleged in Count II arises, if at all, "in" the Chapter 11 case.

 Neither the defendants nor the plaintiff have addressed requirement (3) in the manner set forth above. Both have addressed requirement (3) in terms of whether the claims asserted in the adversary proceeding are "core proceedings," plaintiff asserting that its claims are "core" and defendants asserting that they are not. Although some reported decisions have expressed their reasons for abstaining or not under Section 1334(c)(1) or (2) in terms of whether the claims asserted were core proceedings, the statute itself does not. Of course, since abstention under Section 1334(c)(1) is discretionary a bankruptcy court may exercise that discretion on the grounds it chooses, and whether a bankruptcy court has power to "hear and determine" under Section 157(b) (*i.e.,* core jurisdiction) may be a sensible ground for discretionary abstention under Section 1334(c)(1). But mandatory abstention under Section 1334(c)(2) does *not* turn on the question of whether particular claims are "core proceedings." *See, In re Consulting Partnership,* 72 B.R. at 828 (court ruled on mandatory abstention and the "arising under" and "arising in" factors without discussing core jurisdiction). To understand this it will be helpful to review briefly the relevant jurisdictional provisions in 28 U.S.C. §§ 1334 and 157.

Section 1334 of Title 28 concerns the jurisdiction of *district courts* in respect of bankruptcy cases and proceedings. Section 1334(a) grants the district courts "original and exclusive jurisdiction of all cases under title 11," except as provided in subsection (b). Subsection (b) grants the district courts original but not exclusive jurisdiction "of all civil proceedings arising *under* title 11, or arising *in* or *related to* cases under title 11" (emphasis supplied). Proceedings arising "under title 11" are those based upon some provision of the Bankruptcy Code, such as Count VII based on 11 U.S.C. § 510(c). Proceedings arising "in ... cases under

title 11" are those like Count II where the claim involved in the proceeding arises or accrues during the course of a case under Title 11. Proceedings that are *"related to cases under title 11"* are claims by or against the debtor that arose or accrued prior to or outside the context of a case under Title 11, such as the claims and counterclaims which were asserted in the State Court Action. The Section 157(b) issue of core or non-core simply does not arise anywhere in the context of Section 1334, including subsection (c) concerning permissive and mandatory abstention *by the district court* of jurisdiction which is conferred on the district court under subsection (b) of Section 1334.

Section 157 of Title 28 concerns the power of the district court to refer bankruptcy cases and proceedings to bankruptcy judges sitting in the district. Section 157(a) states that each district court may provide "that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." [3] Subsection (b) of Section 157 concerns the types of cases and proceedings that bankruptcy judges "may hear and determine," and it is in this context only that the statutory issue of "core proceedings" arises. Subsection (b)(1) states that bankruptcy judges "may hear and determine ... all core proceedings ... and may enter appropriate orders and judgments...." Subsection (b)(2) contains a non-exclusive list of "core proceedings."

Significantly, Section 157(b) does not say that a bankruptcy judge may not "hear" a non-core proceeding. Indeed, Section 157(c)(1) states precisely the contrary.

This motion does not concern the question of what proceedings this Court, as a bankruptcy court, may "hear and determine." On this motion to abstain under Section 1334(c), the issue is whether those requirements set forth in subsection (2) for mandatory abstention *by a district court* have been met. Of course, because this Chapter 11 case and all proceedings under, in or related to it have been referred to this Bankruptcy Court by reason of this District's standing order dated July 10, 1984, it is for this Court to make the determination whether the requirements for mandatory abstention have been met. But the statutory requirements for abstention under Section 1334(c)(2) are the same whether the court deciding the issue is a district court or a bankruptcy court. The statutory core versus non-core distinction, bearing upon a bankruptcy court's power to hear and determine, has no bearing on the question whether a district court must abstain under Section 1334(c)(2).

The question whether mandatory abstention turns on a core/non-core analysis is crucial in a case where all the other requirements under Section 1334(c)(2) have been met. If core/non-core were the test and a finding of non-core were warranted, the result would be that the bankruptcy court/district court would have to abstain and the case would go back to the state court in Georgia or Ohio or wherever it originated. But that result would conflict with Section 157(c)(1), which states that "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." In such a case the bankruptcy judge is to submit proposed findings of fact and conclusions of law to a

---

**3.** Under Section 157(a) most if not all district courts have entered a standing order referring all bankruptcy cases and proceedings to their bankruptcy judges. The standing order in the Southern District of New York was signed by Acting Chief Judge Ward on July 10, 1984.

district judge for *de novo* review and decision. Section 157(c)(1) makes clear that a finding of non-core cannot be a factor in mandatory abstention under Section 1334(c)(2).

In this case there are compelling reasons for this Court to retain jurisdiction and decline to abstain (point III, above). It may well be that the pre-petition state law claims against at least the individual defendants are non-core, but nothing in Section 1334(c)(2) requires abstention on that ground.

Since the core/non-core issue is not implicated on this motion, I decline to rule upon it in the context of this motion. Questions such as whether this Court can or will "hear and determine" particular claims and counterclaims between the plaintiff AHT and various of the defendants (28 U.S.C. § 157(b), (c)(2)), whether this Court should hear the case and submit proposed findings and conclusions after trial to the District Court for *de novo* review and decision (28 U.S.C. § 157(c)(1)), and whether all or any of the claims are to be tried to a jury by this Court or a district judge (28 U.S.C. § 157(e)) will be considered by the Court with counsel for the parties at a pretrial conference and, if necessary, in appropriate motion practice.

### *Conclusion*

Defendants' motion to abstain under 28 U.S.C. § 1334(c)(1) and (2) is denied. Plaintiff's counsel will promptly submit an appropriate order.