In re LECO ENTERPRISES, INC., Lord International, Inc., Halfhill Electrical Company, Ltd. and Lord Electric Company, Inc., Debtors.

Kenneth P. SILVERMAN, Trustee of the Estate of Leco Enterprises, Inc., Lord International, Inc., Halfhill Electrical Company, Ltd. and Lord Electric Company, Inc., Plaintiff–Appellee,

v.

GENERAL RAILWAY SIGNAL COMPANY, a unit of General Railway Signal Corporation, Defendant.

GENERAL RAILWAY SIGNAL COMPANY, a unit of General Railway Signal Corporation, Third–Party Plaintiff,

v.

The CITY OF NEW YORK, acting by the NEW YORK CITY TRANSIT AUTHORITY, Third–Party Defendant–Appellant.

No. 91 Civ. 4844 (PKL).
Bankruptcy Nos. 89 B10949
PBA–89 B10952 PBA.
Adv. No. 90–5742A.

United States District Court,
S.D. New York.

Aug. 6, 1992.

O. Peter Sherwood, Corp. Counsel of City of New York, New York City (David A. Bagley, of counsel), for third-party defendant-appellant.

Jaspan, Ginsberg, Ehrlich, Schlesinger, Silverman & Hoffman, Garden City, N.Y. (Eugene P. Cimini, of counsel), for plaintiff-appellee.

## OPINION AND ORDER

LEISURE, District Judge.

This is an appeal from an Order of the Hon. Prudence B. Abram, United States Bankruptcy Judge for the Southern District of New York, dated March 19, 1991 ("March 19 Order"), which denied the motion of third-party defendant-appellant the City of New York (the "City"), for an order abstaining from the exercise of jurisdiction, pursuant to 28 U.S.C. § 1334(c), but rather ordered a stay of the bankruptcy proceeding. For the following reasons, the order of the bankruptcy court is reversed, and the Court abstains from exercising its jurisdiction over this action.

## BACKGROUND

In this bankruptcy appeal, the standard of review of the bankruptcy court's findings of fact is clearly erroneous; the standard of review of the conclusions of law of the bankruptcy court is *de novo. See Gulf States Exploration Co. v. Manville Forest*

Products Corp. (*In re Manville Forest Products Corp.*), 896 F.2d 1384, 1388 (2d Cir.1990).

This appeal arises out of a voluntary bankruptcy petition filed on May 1, 1989 by Leco Enterprises, Inc. and its procedurally consolidated subsidiaries ("Leco" or the "debtor"), in the United States Bankruptcy Court for the Southern District of New York, pursuant to chapter 7 of title 11 of the United States Code; [1] out of an adversary proceeding commenced by the Trustee against General Railway Signal Company, a unit of General Railway Signal Corp. ("General Railway"), on April 3, 1990 (the "first-party adversary proceeding"); out of General Railway's impleader of the City as third-party defendant in the adversary proceeding (the "third-party adversary proceeding"); and out of a state court action in the Supreme Court of the State of New York, New York County, which contains claims essentially identical to the claims asserted in the third-party adversary proceeding (the "state court action").

The third-party adversary proceeding, which is the primary focus of the instant appeal, concerns a contract dated November 9, 1981 (the "subway contract"), between General Railway and the New York City Transit Authority, under which General Railway, as general contractor, was to furnish and install signal and communications systems for a subway route in Brooklyn, Queens and Manhattan. The first-party adversary proceeding concerns a subcontract, dated December 7, 1981 (the "subcontract"), between General Railway and Lord Electric Company, Inc. ("Lord"), one of Leco's procedurally consolidated subsidiaries, which required Lord to install certain electrical equipment necessary for General Railway's performance under the subway contract. Significantly, Leco does not have a contractual relationship with the City under either the subway contract or the subcontract, and, therefore, does not have the right to assert any claims directly against the City. *See* Transcript of Oral

---

1. Kenneth P. Silverman, Esq. (the "Trustee"), the plaintiff-appellee in the instant action, was appointed as the interim Chapter 7 Trustee on May 3, 1989, and became Leco's Chapter 7 Trustee on February 3, 1990.

Argument before Hon. Prudence B. Abram, dated November 27, 1990, ("Tr."), at 9–10.

Although the litigants dispute the causes of the problems that have arisen between them, there is general agreement that the courses of performance of both the subway contract and the subcontract were marred by delay and breach of contract. For example, Leco contends that

Lord and [General Railway] were caused extreme delay of approximately six years by the [City], and, as a result of said delay, Lord was damaged in the amount of $16,673,185. Apart from the issue of delay damages, Lord performed work under the Subcontract for which neither it nor the estate have yet been paid. The amount owed to Lord under the subcontract is $899,433.98.

Appellee's Brief, at 2–3. In contrast, the City has asserted that it is not liable on the claims asserted against it by General Railway. For example, as affirmative defenses, the City relies on contractual notice and exculpatory provisions that are peculiar to City contracts. Moreover, the City has asserted a counterclaim to recover liquidated damages from General Railway for unexcused delays by General Railway and Lord. However, the bona fides of the parties' various claims arising out of these purported delays and breaches have not yet been resolved in any judicial forum.

Although the preceding discussion suggests that all three interested parties in this proceeding—Leco, General Railway and the City—have antagonistic positions, the adversary position of General Railway and Leco, as plaintiff and defendant in the first-party adversary proceeding, is belied by the fact that these litigants entered into an Agreement and Order, so ordered by Judge Abram on April 23, 1990 ("Agree-

ment and Order"). The central provisions of the Agreement and Order are that General Railway will be liable to Leco for 83% of all sums recovered by General Railway against the City; that General Railway will in no circumstances be liable to Leco unless it recovers from the City; and that all other claims between General Railway and Leco arising out of the subcontract are waived. Agreement and Order ¶¶ 2, 4, 5. General Railway and Leco also have agreed to prosecute the action against the City jointly, with the Trustee assuming responsibility for 83% of the cost of the litigation, and General Railway waiving all objections to the jurisdiction of the bankruptcy court. *Id.* ¶¶ 3, 10. Moreover, the Agreement and Order provides that Leco will dismiss the first-party adversary proceeding without prejudice if the third-party adversary proceeding is dismissed, and will wait to reinstate the first-party adversary proceeding until the state court action between General Railway and the City is resolved. *Id.*

Thus, the record indicates that there is no contractual relationship between Leco and the City, and that the first-party adversary proceeding between Leco and General Railway has been settled.[2] However, notwithstanding the absence of either a claim by the debtor against the City or a bona fide dispute in the first-party adversary proceeding, Leco and General Railway have agreed to prosecute the third-party adversary proceeding, which involves claims between non-debtors on a contract to which the debtor was not a party, in the bankruptcy court. In response to this seemingly anomalous situation, the City moved, before Judge Abram, for abstention pursuant to 28 U.S.C. § 1334(c), arguing that it should not be forced to litigate its contract dispute with General Railway in bankruptcy court.

**2.** The Court takes this opportunity to note that the only party that responded to the City's appeal of the March 19 Order was the Trustee. Since Leco cannot assert any claims against the City, the Court has serious concerns with respect to the standing of the Trustee to oppose the City's abstention motion. *See, e.g., Sullivan v. Syracuse Housing Authority,* 962 F.2d 1101, 1106 (2d Cir.1992) ("[t]he doctrine of standing ... addresses the question of 'whether the

[plaintiff] is entitled to have the court decide the merits of ... particular issues'") (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). However, because the parties have not briefed the issue, and because the Court decides in the instant Opinion and Order that it must abstain from the exercise of jurisdiction, it declines fully to address the issue of standing.

During the November 27, 1990 oral argument in the bankruptcy court, it appeared that Judge Abram agreed with the City that the pendency of General Railway's third-party action in the bankruptcy court rested on a weak foundation:

[I]t is very difficult to justify keeping jurisdiction over a suit between non-debtor parties where the contract on which that suit is predicated ... preclude[s] the debtor from actually suing the defendant on it. . . . [T]here is nothing to litigate in the suit between [Leco] and General Railroad [sic]. . . . [Y]ou people have basically stipulated that nothing will happen in the lawsuit between [General Railway and Leco] until the third-party complaint is resolved. So it is impossible to justify this as somehow being an active first-party complaint that the third-party complaint appends to. . . . I am talking about ... when and why should a bankruptcy court adjudicate a dispute between non-debtor parties. . . . The debtor clearly has a significant interest in the outcome of this lawsuit, but it is not a party to the lawsuit, and the debtor can have a significant interest in the outcome of the lawsuit but still not be a party to it, and that's just the quirks of the contracts here and I think that there is an appropriate limit to how far a bankruptcy court should stretch to pull cases into the bankruptcy forum even though the debtor has a vital interest in the outcome of the litigation.

Tr. at 12, 13, 22–23. Nevertheless, despite her initial doubt with respect to the propriety of exercising jurisdiction over the third-party adversary proceeding, Judge Abram denied the City's motions for mandatory and discretionary abstention under 28 U.S.C. § 1334(c)(1) and (2); stayed the first-party and third-party adversary proceedings; and ordered that discovery proceed in the state court action. *See* March 19 Order. This appeal followed.

## DISCUSSION

### A. *Bankruptcy Jurisdiction*

■ To determine whether the City properly can be haled into bankruptcy court to adjudicate its dispute with General Railway, the Court first turns to 28 U.S.C. § 1334(b), which provides, in relevant part, that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." "Arising in" and "arising under" proceedings encompass the matters that are at the core of the jurisdiction of the bankruptcy courts, and "depend upon the application or construction of bankruptcy law as expressed in Title 11." *Consulting Actuarial Partners, Limited Partnership v. Descap Planning, Inc. (In re Consulting Actuarial Partners, Limited Partnership)*, 72 B.R. 821, 828 (Bankr.S.D.N.Y.1987); *accord Luciano v. Maggio*, 139 B.R. 572, 575 (E.D.N.Y.1992) (to arise under title 11, "action must either be created by title 11 or involve administration of the estate"); *Spaulding & Co. v. Buchanan (In re Spaulding & Co.)*, 131 B.R. 84, 88 (N.D.Ill. 1990) (" 'arising under' jurisdiction includes only those proceedings that involve a cause of action 'created or determined by a statutory provision of title 11'. . . . '[A]rising in' jurisdiction apparently encompasses 'those "administrative" matters that arise *only* in bankruptcy cases'—matters not based on any right expressly created by title 11, but that would have no existence outside of the bankruptcy") (citations omitted); 1 King, *Collier on Bankruptcy*, ¶ 3.01[1][c][iii] & [v], at 3–26–29 & 3–32–33 (15th ed. 1992).

■ In addition to this general definition of "arising in" and "arising under" proceedings, examination of the statutory scheme created by Congress in the wake of the invalidation of the broad grant of jurisdiction to the bankruptcy courts in the Bankruptcy Act of 1978, 28 U.S.C. § 1471, by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69–71, 102 S.Ct. 2858, 2870–71, 73 L.Ed.2d 598 (1982), leads the Court to conclude that the core proceedings listed in 28 U.S.C. § 157(b)(2) are essentially identical to the claims defined as "arising in" and "arising under" proceedings in 28 U.S.C. § 1334. *See* 28 U.S.C. § 157(b)(1) (granting power to bank-

ruptcy judges to hear "all core proceedings arising under title 11, or arising in a case under title 11"); *see also Wood v. Wood (In re Wood )*, 825 F.2d 90, 96–97 (5th Cir.1987) ("section 157 apparently equates core proceedings with the categories of 'arising under' and 'arising in' proceedings [under 28 U.S.C. § 1334]"). Thus, a proceeding is encompassed within the bankruptcy court's core, "arising under" and "arising in" jurisdiction "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Id.* at 97; *accord Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 173 (Bankr. E.D.N.Y.1986) ("[t]o be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment"), *aff'd*, 1987 WL 47763 (E.D.N.Y. Mar. 27, 1987); *Ben Cooper, Inc. v. Insurance Company of State of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1398 (2d Cir.) (discussing scope of core proceedings), *vacated, —— U.S. ——*, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated*, 924 F.2d 36 (2d Cir.), *cert. denied, —— U.S. ——*, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991).

■ In light of this discussion, it is clear that the third-party adversary proceeding between General Railway and the City is not within the "arising under" or "arising in" jurisdiction of the bankruptcy court. The claims asserted by General Railway against the City do not involve substantive rights created by title 11 or matters that only can arise in the context of a bankruptcy case. Rather, the third-party adversary proceeding is between non-debtors, and concerns purported breaches and delays of a contract between these non-debtors. Indeed, as this Court previously has found, the debtor and its subsidiary, Lord, were not parties to the subway contract, and have no right to assert claims directly against the City. Accordingly, the Court finds that the third-party adversary proceeding is not within the "arising under" or "arising in" jurisdiction of the bankruptcy court. *See, e.g., Gordon v. Shirley Duke Associates, A.P.I. (In re Shirley Duke As-*

*sociates)*, 611 F.2d 15, 18 (2d Cir.1979) ("As a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy."); *General American Corp. v. Merrill Lynch Commodities, Inc. (In re Ross)*, 64 B.R. 829, 833–34 (Bankr.S.D.N.Y.1986) (Abram, J.) (discussing jurisdiction of bankruptcy court in action between non-debtors).

■ The Court also finds that the third-party adversary proceeding is not a core proceeding under 28 U.S.C. § 157(b)(2). First, the Court rejects the Trustee's contention that General Railway's suit against the City is a core, accounts receivable action, to "turn over property of the estate" under section 157(b)(2)(E). The Trustee's position ignores the fact that the City has no liability to Leco and is not in possession of any property of the estate. As explained by Judge Abram, "[i]t is not a receivable that's owed to the estate under the way in which the lawsuits have been structured, because under the contract ... [only General Railway] has the right to sue the City." Tr., at 9. Moreover, given the disputes that currently exist with respect to the liability of the City under the subway contract and the fact that Leco was not a party to this contract, the Court declines to characterize the third-party adversary proceeding as an action by the Trustee for the turnover of "a debt that is property of the estate that is matured, payable on demand, or payable on order." 11 U.S.C. § 542 (defining summary bankruptcy turnover rights). As explained in *Acolyte, supra*, 69 B.R. at 171,

> To the extent that a BONA FIDE dispute exists with regard to the existence of an identifiable fund or res, a proceeding to recover that res is not a turnover ... unless and until the existence, magnitude and identity of the res are first established. The jurisdiction to establish this existence, magnitude and identity is precisely what *Marathon* prohibits Congress from granting to the bankruptcy court.

*See also Calhoun v. Copeland Corp.* (*In re Gordons Transports, Inc.*), 51 B.R. 633, 636 (Bankr.W.D.Tenn.1985) ("the terms 'matured', 'payable on demand', and 'payable to order' refer to debts that are presently payable, as opposed to those that are contingent and become payable only upon the occurrence of a certain act or event").

■ The Court also rejects the Trustee's attempt to draw the third-party adversary proceeding within the catch-all categories of core proceedings defined in 28 U.S.C. § 157(b)(2)(A) and (O). Since Leco has no claims against the City, the third-party adversary proceeding simply is not an action "concerning administration of the estate," 28 U.S.C. § 157(b)(2)(A), or a "proceeding affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," 28 U.S.C. § 157(b)(2)(O). *See Silverman v. U.W. Marx, Inc.* (*In re Leco Enterprises, Inc.*), 125 B.R. 385, 389 (S.D.N.Y.1991) (adversary proceeding that "concerns the administration and liquidation of an asset of the debtor's estate, namely an account receivable ... clearly falls within the plain meaning of § 157(b)(2)(A) and (O)"); *Kolinsky v. Russ* (*In re Kolinsky*), 100 B.R. 695, 701 (Bankr. S.D.N.Y.1989) (suit by non-debtor for rescission of contract not within section 157(b)(2)(A)); *Acolyte, supra,* 69 B.R. at 173–74 ("Congress gave bankruptcy courts flexibility to carry out the provisions of Title 11 by inserting the catchall provisions in the framework of § 157.... However, any reasonable reading of §§ 157(b)(2)(A) and (O) should be kept ... within the holding in *Marathon* ).

■ Nevertheless, the Court finds that the third-party adversary proceeding is related to a case under title 11, which vests this Court with jurisdiction over the dispute between General Railway and the City. As explained by the Third Circuit,

the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis omitted); *see also In re Kolinsky, supra,* 100 B.R. at 702 ("If a resolution of an action between nondebtors would affect the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights or liabilities, such civil proceeding will be regarded as related to the bankruptcy case."); 1 *Collier on Bankruptcy, supra,* ¶ 3.01[1][c][iv] (" 'related proceedings' are those which ... concern suits between third parties which in one way or another affect the administration of the title 11 case"). In light of the contracts between the litigants, it is clear that a recovery by General Railway on its claims against the City will inure to the benefit of the debtor. Accordingly, the Court finds that the instant action is related to an action under title 11, and that jurisdiction in this Court is proper.

## B. *Abstention*

■ Although this Court has jurisdiction over the third-party adversary proceeding pursuant to 28 U.S.C. § 1334(b), this holding does not lead inexorably to the conclusion that the dispute between the City and General Railway will be resolved in this forum. Under section 1334(c)(2),

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

There are six criteria for determining whether "'mandatory abstention,'" *Ben Cooper, Inc. v. Insurance Company of State of Pennsylvania (In re Ben Cooper, Inc.)*, 924 F.2d 36, 38 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991), under section 1334(c)(2) is appropriate: (1) a timely abstention motion; (2) a state law claim or cause of action; (3) no independent federal jurisdictional basis; (4) a claim "related to" but not "arising in" or "arising under" title 11; (5) a parallel action commenced in state court; and (6) the ability to timely adjudicate the state court action. *See In re Consulting Actuarial Partners, supra,* 72 B.R. at 828; *Acolyte, supra,* 69 B.R. at 177; *Allied Mechanical and Plumbing Corp. v. Dynamic Hostels Housing Development Fund Co. (In re Allied Mechanical and Plumbing Corp.)*, 62 B.R. 873, 877–78 (Bankr.S.D.N.Y.1986).

 Scrutiny of the briefs submitted by the litigants reveals that there is no dispute with respect to the first three criteria: the City's abstention motion was timely brought; General Railway's claims rely exclusively on state law; and there is no independent basis for federal subject matter jurisdiction other than the nexus between the third-party adversary proceeding and Leco's bankruptcy petition. Moreover, with respect to the fourth factor, this Court already has held that the third-party adversary proceeding is "related to" an action under title 11, but is not within the "arising in" or "arising under" jurisdiction of the bankruptcy court. Thus, the only issues that must be resolved to determine the applicability of section 1334(c)(2) are the pendency of a parallel state court action and the ability timely to adjudicate this state court action.

Turning first to the pendency of a parallel state court proceeding, it is clear that the state court action between General Railway and the City subsumes all of the claims that are raised in the third-party adversary proceeding. Thus, because "the state case seeks essentially the same relief as is requested in the [third-party] adversary proceeding in this case," *In re Consulting Actuarial Partners, supra,* 72

B.R. at 828, the fifth factor has been satisfied. Moreover, the Trustee's argument that the state court action does not satisfy the fifth criteria because "no action has been commenced in the State courts by the Trustee," Appellee's Brief, at 16, ignores the fact that Leco and the Trustee have no right of action against the City under the subway contract, the subcontract or the Agreement and Order, and must be rejected.

The Court also finds that the final factor, the ability timely to adjudicate the case in state court, has been met. While the question whether a case can be timely adjudicated "is a matter of judicial discretion," *World Solar Corp. v. Steinbaum (In re World Solar Corp.)*, 81 B.R. 603, 612 (Bankr.S.D.Cal.1988), "[a] naked assertion that the matter can be adjudicated in the state court, without more, is insufficient to satisfy this requirement." *In re Consulting Actuarial Partners, supra,* 72 B.R. at 828. "In deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter proceeding. In a Chapter 7 proceeding. . . . [t]here is no administrative urgency or plan of reorganization to facilitate. . . . [and] timely adjudication can be weighed relatively lightly." *World Solar, supra,* 81 B.R. at 612. Other factors to be considered in this inquiry include whether discovery is progressing, whether motions are being decided and whether the state court proceeding is "actively proceeding towards a trial." *In re Allied Mechanical and Plumbing Corp., supra,* 62 B.R. at 878; *see also Acolyte, supra,* 69 B.R. at 180 (placing burden on debtor to demonstrate that parallel state court proceeding cannot be timely adjudicated and rejecting debtor's "conclusory statement that matters generally take longer to work their way through the state court in this area of the country").

A review of the record before the Court indicates that the state court action between General Railway and the City is actively moving towards trial. Discovery in the state court is progressing, and motions have been resolved by the state court in a

timely manner. *See, e.g.,* Order of Justice Eugene L. Nardelli, dated January 8, 1991 ("January 1991 State Court Order"), attached as Exh. B. to the City's Brief on Appeal. Moreover, it appears that at least some of the delays in the state court proceeding are directly attributable to the actions of Leco and General Railway. For example, although "[i]t is intended that th[e] disclosure of evidence proceed at the initiative of the parties, free from the time-consuming and costly process of court intervention," *Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir. 1991) (applying Federal Rules of Civil Procedure), the City was forced to apply to the state court for an order compelling General Railway to respond to interrogatories, produce documents and attend a deposition. *See* January 1991 State Court Order, at 1.

The reluctance of Leco and General Railway to proceed expeditiously in state court also is evidenced by the Trustee's assertion that the state court action was commenced "for the express and limited purpose of preserving the [General Railway] causes of action against the City in the event the federal court litigation was dismissed." Appellee's Brief, at 3. In light of the fact that the state court action is advancing towards a trial despite the apparent intransigence of Leco and General Railway, and given the lack of urgency in Leco's chapter 7 bankruptcy proceeding, the Court finds that the state court action can be timely adjudicated for the purposes of 28 U.S.C. § 1334(c)(2).

Accordingly, the Court finds that this is an appropriate case for mandatory abstention under 28 U.S.C. § 1334(c)(2). Before concluding, the Court also takes this opportunity to note that abstaining from the exercise of jurisdiction comports with principles of federalism. The dispute that Leco is trying to divert into bankruptcy court concerns the contractual relationship between the City and a general contractor responsible for installation of signal and communications equipment in the New York City subway system, which is of paramount concern to the States and should properly be left for resolution in state court. *Cf. Colorado River Water Conser-*

*vation District v. United States,* 424 U.S. 800, 817–818, 96 S.Ct. 1236, 1246–1247, 47 L.Ed.2d 483 (1976) (listing factors governing abstention); *Alabama Public Service Commission v. Southern Railway Co.,* 341 U.S. 341, 346, 71 S.Ct. 762, 766, 95 L.Ed. 1002 (1951) ("regulation of intrastate railroad service is 'primarily the concern of the state'") (citation omitted).

■ Given the lack of diversity of citizenship and the absence of a federal question other than the indirect impact that the third-party adversary proceeding will have on Leco's bankruptcy estate, the City should not be required to resolve its contract dispute with General Railway in the bankruptcy court. The long arm of the bankruptcy law simply is not strong enough to give a creditor of a debtor in chapter 7 liquidation proceedings the power to force a third party that had no contractual relationship with the debtor to sacrifice its right to a trial in either state court or before an Article III judge and to litigate in bankruptcy court. Indeed, were this Court to adopt the position advocated by the Trustee, creditors could regularly compel third parties to litigate in bankruptcy court without regard for the consent provisions embodied in 28 U.S.C. § 157(c)(2). The effort of the Trustee and General Railway to use Leco's bankruptcy as a proper basis for haling the City into bankruptcy court constitutes an attempt to extend the bankruptcy scheme beyond the boundaries delineated by both Congress and the courts, and must be rejected. *Cf. State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 535, 87 S.Ct. 1199, 1206, 18 L.Ed.2d 270 (1967) ("There is nothing in the statutory scheme, and very little in the judicial and academic commentary upon that scheme, which requires that the tail be allowed to wag the dog in this fashion.").

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court hereby is reversed.

This Court hereby abstains from the exercise of jurisdiction over this action.

SO ORDERED.