09-4302-cv (L)
In re: Parmalat Securities Litigation

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

—————————————————————————

August Term, 2011

Argued: December 7, 2011          Decided: February 21, 2012

Docket Nos. 09-4302-cv (L); 09-4306-cv (con);
09-4373-cv (con)

—————————————————————————

PARMALAT CAPITAL FINANCE LIMITED,

*Plaintiff-Appellant*,

DR. ENRICO BONDI, EXTRAORDINARY COMMISSIONER OF PARMALAT FINANZIARIA
S.P.A., PARMALAT S.P.A., AND OTHER AFFILIATED ENTITIES, IN
EXTRAORDINARY ADMINISTRATION UNDER THE LAWS OF ITALY,

*Plaintiff-Counter-Defendant-Third-Party-Defendant-Appellant*,

CAPITAL & FINANCE ASSET MANAGEMENT S.A., CATTOLICA PARTECIPAZIONI
S.P.A., HERMES FOCUS ASSET MANAGEMENT EUROPE LIMITED, ERSTE
SPARINVEST KAPITALANLAGEGESELLSCHAFT M.B.H., SOLOTRAT, SOCIETE
MODERNE DES TERRASSEMENTS PARISIENS, RENATO ESPOSITO, FONDAZIONE
ITALO MONZINO, SOUTHERN ALASKA CARPENTERS PENSION FUND, ON BEHALF OF
ITSELF AND ALL OTHERS SIMILARLY SITUATED, CRISTINA PONCIBO, MARGERY
LOUISE KRONENGOLD, ROBERT MCQUEEN, CUSTODIAN, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED, FERRI GIAMPOLO, FOOD
HOLDINGS LIMITED, DAIRY HOLDINGS LIMITED, G. JAMES CLEAVER, GORDON
I. MACRAE, GERALD K. SMITH, LAURA J. STURAITIS, MONUMENTAL LIFE
INSURANCE COMPANY, TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY,
TRANSAMERICA LIFE INSURANCE COMPANY, AVIVA LIFE INSURANCE COMPANY,
PRINCIPAL GLOBAL INVESTORS, LLC, PRINCIPAL LIFE INSURANCE COMPANY,
SCOTTISH RE (US) INC., HARTFORD LIFE INSURANCE COMPANY, PLAN
ADMINISTRATOR G. PETER PAPPAS,

*Plaintiffs*,

—v.—

BANK OF AMERICA CORPORATION, BANC OF AMERICA SECURITIES LIMITED, BANK OF AMERICA, N.A., BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, BANC OF AMERICA SECURITIES LLC, BANK OF AMERICA INTERNATIONAL, LTD., GRANT THORNTON INTERNATIONAL, LTD.,

*Defendants-Appellees,*

GRANT THORNTON INTERNATIONAL, GRANT THORNTON LLP,

*Defendants—Third-Party-Plaintiffs-Counter-Claimants-Appellees,*

DEUTSCHE BANK AG, MORGAN STANLEY & CO., INCORPORATED, BONLAT FINANCING CORPORATION, CALISTO TANZI, FAUSTO TONNA, COLONIALE S.P.A., CITIGROUP INC., BUCONERO, LLC, ZINNI & ASSOCIATES, P.C., DELOITTE TOUCHE TOHMATSU, DELOITTE & TOUCHE S.P.A., A SOCIETA PER AZIONI UNDER THE LAWS OF ITALY, JAMES E. COPELAND JR., PARMALAT FINANZIARIA S.P.A., STEFANO TANZI, LUCIANO DEL SOLDATO, DOMENICO BARILI, FRANCESCO GIUFFREDI, GIOVANNI TANZI, DELOITTE & TOUCHE USA, LLP, DELOITTE & TOUCHE L.L.P., CREDIT SUISSE FIRST BOSTON, CITIBANK, EUREKA SECURITISATION PLC, VIALATTEA LLC, PAVIA E ANSALDO, BANCA NAZIONALE DEL LAVORO S.P.A., CITIBANK, N.A., PROFESSOR MARIA MARTELLINI, BANCA INTESA S.P.A., DELOITTE & TOUCHE TOHMATSU AUDITORES INDEPENDENTES, CREDIT SUISSE INTERNATIONAL, CREDIT SUISSE SECURITIES (EUROPE) LIMITED, CREDIT SUISSE, CREDIT SUISSE GROUP, GRANT THORNTON S.P.A., A SOCIETA PER AZIONI UNDER THE LAWS OF ITALY, NOW KNOWN AS ITALAUDIT, S.P.A.,

*Defendants,*

PARMATOUR S.P.A.,

*Defendant-Third-Party-Defendant.*

——————————————————————————————

Before: CABRANES and WESLEY, <u>Circuit Judges</u>, and KOELTL, <u>District Judge</u>.[*]

This is an appeal from the judgments of the United States District Court for the Southern District of New York (Kaplan, J.) dismissing the claims of plaintiffs-appellants Parmalat Capital Finance Limited and Dr. Enrico Bondi against the Grant Thornton defendants after determining, pursuant to the mandate of this Court, that mandatory abstention under 28 U.S.C. § 1334(c)(2) was not required in these bankruptcy-related cases. Because we find that mandatory abstention was required in these cases under the test we laid out in our prior Opinion, we vacate the judgments of the District Court, and remand these cases to the District Court with instructions to transfer them to the United States District Court for the Northern District of Illinois so that they can be remanded to Illinois state court.

---

[*] The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

————————

J. Gregory Taylor, Allan B. Diamond, J. Benjamin King, Diamond McCarthy LLP, for Appellant Parmalat Capital Finance Limited.

Kathleen M. Sullivan, Peter E. Calamari, Terry L. Wit, Sanford I. Weisburst, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, for Appellant Dr. Enrico Bondi.

James L. Bernard, David M. Cheifetz, Stroock & Stroock & Lavan LLP, New York, NY, for Appellees Grant Thornton International, Inc. and Grant Thornton International Ltd.

Linda T. Coberly, Bruce R. Braun, William P. Ferranti, Winston & Strawn LLP, Chicago, IL, for Appellee Grant Thornton LLP.

————————

PER CURIAM:

Plaintiffs-appellants Parmalat Capital Finance Limited ("PCFL") and Dr. Enrico Bondi ("Bondi," and collectively, "Appellants") appeal from the judgments of the United States District Court for the Southern District of New York (Kaplan, J.) dismissing their claims against Grant Thornton International, Inc., Grant Thornton International Ltd, and Grant Thornton LLP (collectively, "Grant Thornton" or "Appellees"). In our prior Opinion in this case, Parmalat Capital Fin. Ltd. v. Bank of America Corp. ("Parmalat"), 639 F.3d 572, 582-83 (2d Cir. 2011), we vacated the decisions not to abstain from deciding these cases pursuant to the mandatory abstention provision in 28 U.S.C. § 1334(c)(2) that applied to these bankruptcy-related proceedings.

We remanded the cases to the District Court for a determination of whether the cases could be "timely adjudicated" in Illinois state court in accordance with the factors we set forth in that Opinion. On remand, the District Court again concluded that mandatory abstention did not apply, In re Parmalat Sec. Litig., Nos. 04 Civ. 9771, 06 Civ. 2991, 2011 WL 3874824, at *1 (S.D.N.Y. Aug. 31, 2011), and the Appellants renewed their appeals to this Court arguing for mandatory abstention. Because we find that these cases can be "timely adjudicated" within the meaning of the statute and pursuant to

-5-

the test we laid out in our prior Opinion, we conclude that abstention was mandatory in these cases. Accordingly, we vacate the judgments of the District Court and remand these cases with instructions that the cases be transferred to the Northern District of Illinois and remanded to Illinois state court.

**BACKGROUND**

The facts in these long-running cases were fully set forth in our prior Opinion, Parmalat, 639 F.3d at 576-78, and we provide only a summary here.

These cases arise out of the collapse of Parmalat Finanziaria, S.p.A. ("Old Parmalat") in 2003. Plaintiff-appellant Bondi represents Old Parmalat's Italian bankruptcy estate as its Extraordinary Commissioner under Italian law. Parmalat's plan of reorganization, the Concordato, was approved after the commencement of these lawsuits, and is proceeding in Italy. Plaintiff-appellant PCFL is a Grand Caymans-based corporate subsidiary of Parmalat. PCFL is in liquidation in the Cayman Islands.

In 2004, PCFL and Bondi commenced separate proceedings pursuant to former 11 U.S.C. § 304 in the Bankruptcy Court for the Southern District of New York. These proceedings permitted PCFL and Bondi, as representatives of the foreign bankruptcy estates, to commence bankruptcy cases in the United States in

-6-

order to enjoin litigation against PCFL and Parmalat in the United States courts. The bankruptcy court entered a preliminary injunction shielding Old Parmalat from American lawsuits. Purchasers of Old Parmalat's debt and equity securities had filed securities fraud class action lawsuits in the United States against Old Parmalat and against various banks and auditing firms that had allegedly participated in the fraud, including Appellees Grant Thornton, who had been auditors for Old Parmalat and PCFL. After the issuance of the preliminary injunction, the securities fraud plaintiffs dropped Old Parmalat as a defendant.

In August 2004, Bondi filed suit in Illinois state court against Grant Thornton, alleging claims arising under Illinois law including professional malpractice, fraud, negligent misrepresentation, and unlawful civil conspiracy. Bondi filed a similar suit in New Jersey state court against Citigroup. In September 2004, Grant Thornton removed the Illinois case to the United States District Court for the Northern District of Illinois on the basis of 28 U.S.C. §§ 1334(b) and 1452, arguing that removal was proper because the case was "related to" Bondi's § 304 proceeding in the Southern District of New York. Bondi filed a motion to remand, arguing that the court was required to abstain from hearing the case pursuant to 28 U.S.C. § 1334(c)(2). The Judicial Panel on Multidistrict Litigation

transferred Bondi's action against Grant Thornton to Judge Kaplan in the Southern District of New York. On February 25, 2005, Judge Kaplan denied Bondi's motion to remand to state court. The District Court found that it had jurisdiction pursuant to § 1334(b) and that abstention was not mandatory. The District Court denied Bondi's motion for an interlocutory appeal pursuant to 28 U.S.C. § 1252(b).

In December 2005, PCFL filed suit against Grant Thornton in the same Illinois state court, alleging similar claims to those asserted by Bondi. PCFL also filed a complaint in North Carolina state court against Bank of America alleging some similar claims. Grant Thornton removed the Illinois case to the United States District Court for the Northern District of Illinois, again arguing that removal was proper because the state law claims were related to PCFL's § 304 proceeding. PCFL, like Bondi, filed a motion to abstain and remand, arguing that abstention was mandatory pursuant to 28 U.S.C. § 1334(c)(2). The Northern District of Illinois denied PCFL's motion. That court then transferred the case to Judge Kaplan in the Southern District of New York for consolidation with Bondi's case. In a separate proceeding, the North Carolina case against Bank of

America was also transferred to the Southern District of New York.[1]

In October, 2005, the Italian bankruptcy court approved the Concordato. Under the Concordato, a newly formed entity, Parmalat, S.p.A. ("New Parmalat"), assumed all of the legal liabilities, as well as the assets, of its predecessor companies. New Parmalat acts as a claims administrator for creditors of Old Parmalat under the Concordato. See Bondi v. Capital & Fin. Asset Mgmt. S.A., 535 F.3d 87, 89 (2d Cir. 2008). In June 2007, the District Court denied Bondi's motion to bar the securities fraud plaintiffs from bringing direct claims against New Parmalat. See In re Parmalat Sec. Litig., 493 F. Supp. 2d 723 (S.D.N.Y. 2007), aff'd, Bondi, 535 F.3d at 94. The District Court also granted a motion to permit Grant Thornton to file third party contribution claims against Parmalat in the securities class action. See In re Parmalat Sec. Litig., 472 F. Supp. 2d 582 (S.D.N.Y.), aff'd, 240 F. App'x 916 (2d Cir. 2007). The securities class actions eventually settled.

Meanwhile, the Illinois and North Carolina actions continued in the Southern District of New York. Following discovery, the District Court issued a detailed and thoughtful

_____

[1] Bondi's New Jersey case against Citigroup remained in New Jersey state court. See, e.g., Bondi v. Citigroup, Inc., 32 A.3d 1158 (N.J. Super. Ct. App. Div. 2011).

-9-

opinion granting summary judgment to the defendants.  See In re Parmalat Sec. Litig., 659 F. Supp. 2d 504 (S.D.N.Y. 2009).  With regard to the North Carolina action, we affirmed the District Court's grant of summary judgment to Bank of America.  See Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 412 F. App'x 325 (2d Cir. 2011) (summary order).

In a separate Opinion regarding the Illinois actions against Grant Thornton, we vacated the decisions not to abstain from deciding these cases pursuant to the mandatory abstention provision in 28 U.S.C. § 1334(c)(2).  Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 582-83 (2d Cir. 2011).  We remanded the Illinois cases to the District Court for a determination of whether the cases could be "timely adjudicated" in Illinois state court within the meaning of § 1334(c)(2), in accordance with the factors we set forth in that Opinion.  On remand, the District Court again concluded that mandatory abstention did not apply.  In re Parmalat Sec. Litig., Nos. 04 Civ. 9771, 06 Civ. 2991, 2011 WL 3874824, at *1 (S.D.N.Y. Aug. 31, 2011).  The Appellants renewed their appeals to this Court arguing for mandatory abstention.

**DISCUSSION**

Section 1334(c)(2) provides that, in certain circumstances, a district court must abstain from hearing state law claims that are related to a bankruptcy case when those proceedings can be "timely adjudicated" in state court. 28 U.S.C. § 1334(c)(2). In our previous Opinion, we explained that "[f]our factors come into play in evaluating § 1334(c)(2) timeliness: (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." Parmalat, 639 F.3d at 580 (citing In re Georgou, 157 B.R. 847, 851 (N.D. Ill. 1993)). The issue on this renewed appeal is whether that four factor test was met in these cases. We review the decision whether to abstain de novo. Id.

**I.**

With regard to the first factor, "the backlog of the state court's calendar relative to the federal court's calendar," we explained that "[t]he inquiry does not turn exclusively on whether an action could be adjudicated most quickly in state court[, but] is, however, informed by the comparative speeds of

-11-

adjudication in the federal and state forums." Id. The District Court found that this factor ultimately weighs in favor of denying abstention. In re Parmalat, 2011 WL 3874824, at *1-*3. We agree that this factor weighs in favor of denying abstention, but this factor is not dispositive. It is plainly the case that, were this claim to remain in federal court, we would reach the merits of the already-decided motions for summary judgment. There would be a decision on the merits sooner if abstention were denied. But that difference in timing appears to be a matter of months, rather than years.

The Appellants have conceded that, if this case were remanded to the Illinois state courts, the Appellants will not seek to relitigate the discovery issues already decided by the District Court. If they received an adverse judgment, it could then be appealed directly through the Illinois appellate courts. There is no allegation in the record that the Illinois courts are "backlogged," and no dispute over the assertion that the difference in the time it takes to resolve a case between federal and Illinois state courts, when both start at the same time, is no more than a few months. The conclusion that there would be years of delay from a remand overestimates, based solely on the complexity of the record, the amount of time an Illinois court might take to decide or review a summary judgment motion.

On balance, this factor does tip in favor of denying abstention. At the very least, there will be delay added for the review of the summary judgment motion by an Illinois trial court. But the entire inquiry cannot "turn exclusively on whether an action could be adjudicated most quickly in state court." Parmalat, 639 F.3d at 580; see also In re Exide Techs., 544 F.3d 196, 218 n.14 (3d Cir. 2008) ("The question is not whether the action would be more quickly adjudicated in [the bankruptcy court] than in state court, but rather, whether the action can be timely adjudicated in the state court." (alterations in original) (internal quotation marks omitted)).

The District Court did not specifically address each of the other three factors.[2] We now address them in turn.

The second factor, "the complexity of the issues presented and the respective expertise of each forum" cuts in favor of remand. We explained in our prior Opinion that "[t]he district court may find that this factor particularly favors abstention here because one of the key issues in this case—the defense of in pari delicto—is a matter of Illinois state law and there is some doubt as to the nature and reach of the defense." Parmalat, 639 F.3d at 580 n.8. The District Court did not address these legal issues, despite the fact that, as the

---

[2] The remaining factors solely involve issues of law that are not premised on findings of fact.

Appellees conceded at oral argument, basic questions regarding in pari delicto under Illinois law are unsettled. See, e.g., Peterson v. McGladrey & Pullen, LLP, --- F. Supp. 2d ----, 2010 WL 4435543, at *2-*3 (N.D. Ill. 2010) ("[T]here is no controlling authority in the Seventh Circuit or Illinois on whether the defense of in pari delicto is available against a bankruptcy trustee."), on appeal, No. 10-3770 (7th Cir.) (argued Sept. 8, 2011).[3]

Instead, the District Court appeared to find that this factor supported denying abstention, because the facts in the case are complex, and the District Court is already familiar with them. In re Parmalat, 2011 WL 3874824, at *2-*3. But the District Court did not address the complexity of the legal issues, even though we specifically highlighted that the complexity of state law issues here "particularly favors abstention," and despite the fact that the District Court's disposition of these cases rested on its prediction and interpretation of Illinois law. See In re Parmalat Sec. Litig.,

---

[3] Although Amici Curiae have argued that in pari delicto should not apply to Bondi because he is an appointed public official charged with overseeing Parmalat's bankruptcy affairs, Bondi has analogized his position to that of a bankruptcy trustee throughout this litigation. Indeed, Bondi conceded to the District Court that he "stands in the shoes" of Parmalat, and on appeal, he likewise did not assert that in pari delicto did not apply to him on the basis of his position as Extraordinary Commissioner of Old Parmalat.

659 F. Supp. 2d 504, 519-20 & nn. 101, 103 (S.D.N.Y. 2009); id. at 530-32 & nn. 162, 166-168, 170. This Court, in another case, found that the application of in pari delicto to auditor malpractice under New York law was sufficiently important and unsettled to warrant certifying questions to the New York Court of Appeals. See Kirschner v. KPMG LLP, 590 F.3d 186 (2d Cir. 2009); 938 N.E.2d 941 (N.Y. 2010) (responding to certified questions). The high courts of Pennsylvania and New Jersey have each issued recent decisions limiting the in pari delicto doctrine in auditor malpractice cases. See Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PricewaterhouseCoopers, LLP, 989 A.2d 313 (Pa. 2010); NCP Litig. Trust v. KPMG LLP, 901 A.2d 871 (N.J. 2006). In our prior Opinion we specifically noted that, "Illinois does not permit our Court to certify questions of Illinois state law to the Illinois Supreme Court." Parmalat, 639 F.3d at 580 n.8. Remand will allow the state courts of Illinois to speak directly on these issues of state law. Moreover, the complexity of the factual issues in these cases is tempered by the fact that there is a thorough summary judgment record that will accompany this case back to the Illinois state court.

The third factor, "the status of the title 11 bankruptcy proceeding to which the state law claims are related," also favors remand. We specifically explained in our prior Opinion

-15-

that "[b]ecause a [bankruptcy] court overseeing a § 304 case is not tasked with overseeing reorganization or liquidation of the estate, we see no reason why, as a result of the § 304 proceeding, the litigants in a state law proceeding would require swift resolution of the state law claims." Parmalat, 639 F.3d at 581 n.9. The District Court did not explain why such swift resolution of the § 304 proceeding was required here, or even whether a quicker resolution of the Illinois claims would have any effect on the § 304 proceeding. It is difficult to see how these actions will affect the § 304 proceeding, and the Appellees do not claim that they would. They argue that the factor is "neutral," but it is not, in our view, neutral. It supports the proposition that these cases can be timely adjudicated in state court without affecting the federal interest in "related-to" jurisdiction.

The fourth factor, "whether the state court proceeding would prolong the administration or liquidation of the estate," also favors remand. The Appellees do not challenge the assertion that the ability of New Parmalat to pay creditors according to the Concordato does not depend on the resolution of the Illinois claims. It appears undisputed that the Italian reorganization of Parmalat will be completed when the current appeal in Italy is concluded, so that the pendency of the Illinois cases will not affect the reorganization of Parmalat.

Nor is there any dispute that PCFL is in liquidation in the Cayman Islands. See In re Leco Enters., Inc., 144 B.R. 244, 251 (S.D.N.Y. 1992) ("In deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter proceeding. In a Chapter 7 proceeding there is no administrative urgency or plan of reorganization to facilitate and timely adjudication can be weighed relatively lightly." (alterations and internal quotation marks omitted)); accord Bates & Rogers Constr. Corp. v. Cont'l Bank, N.A., 97 B.R. 905, 908 (N.D. Ill. 1989) ("Bates & Rogers is involved in a liquidating Chapter 11 which involves no reorganization. Consequently, no administrative urgency or plan of reorganization exists to facilitate. In light of this fact, we do not believe that a potential delay in state court will significantly affect the administration or liquidation of the estate." (citation omitted)); see also Parmalat, 639 F.3d at 581-82 ("Unlike WorldCom, the district court here is not charged with administration of a bankruptcy estate. As a result, the possibility that remand of the state court claims will slow down the § 304 proceeding is insufficient to show that state court adjudication would be untimely. The inquiry's proper focus is on the timely administration of the estate, not the § 304 proceeding.").

The District Court did not address this factor with specific reference to the types of proceedings at issue, but the Appellees argue that remand would harm the creditors by increasing the cost of litigation. The issue, though, is plainly not whether abstention increases the ultimate payout to the creditors, but whether it "unduly prolong[s] the administration of the estate" at issue. Parmalat, 639 F.3d at 581. As we noted, the Appellants are the administrators of the estates at issue, and were presumably "well versed in the timeliness concerns of their respective foreign bankruptcy proceedings when they selected the state forum." Id. at 581 n.10. That presumption is only buttressed by the nature of the foreign bankruptcy proceedings and the extent to which they do not depend on the Illinois claims for resolution.

These are unusual cases. They have existed in parallel with a securities fraud class action that was also before the District Court, in which Grant Thornton had asserted third-party contribution claims against Parmalat. At least Bondi likely could have asserted Parmalat's state law claims against Grant Thornton in that securities fraud action, but he chose not to do so. Instead, Bondi chose to assert these claims as a separate action in a state forum, and the unusual procedural posture of these cases reflects that decision. However, mandatory abstention affords that choice. By contrast, when PCFL

attempted to sue Bank of America in North Carolina state court, there was an independent basis for federal jurisdiction, unrelated to bankruptcy jurisdiction.  Mandatory abstention did not apply in that case, and we summarily affirmed the District Court's grant of summary judgment to Bank of America.

In sum, the four factors weigh in favor of abstention. While some additional time will be expended by remanding these cases, that delay does not outweigh the substantial factors that militate in favor of abstention, namely the complexity of the state law issues, the deference owed to state courts in deciding state law issues where possible, and the minimal effect of the state cases on the federal bankruptcy action and on the administration of the underlying estates.

The four factors are meant to guide courts' analyses with respect to the ultimate balance, struck by Congress, between, on the one hand, creating a federal forum for purely state law cases which, due to delay, might impinge upon the federal interest in the administration of a bankruptcy estate, and, on the other, ensuring that purely state law cases remain in state courts when they would not significantly affect that federal interest.  See Leco, 144 B.R. at 252 (§ 1334 mandatory abstention "comports with principles of federalism"); cf. Stern v. Marshall, 131 S. Ct. 2594, 2619-20 (2011) ("The dissent asserts . . . that, 'to be effective, a single tribunal must have broad

-19-

authority to restructure debtor-creditor relations.'  But the framework Congress adopted in the 1984 Act already contemplates that certain state law matters in bankruptcy cases will be resolved by judges other than those of the bankruptcy courts. Section 1334(c)(2), for example, requires that bankruptcy courts abstain from hearing specified non-core, state law claims that 'can be timely adjudicated in a State forum of appropriate jurisdiction'" (citation and alterations omitted)).  The factors are ultimately interrelated: an action might be "timely adjudicated" in state court, despite some substantial delay, where the delay has little or no effect on the bankruptcy estate which creates the federal interest.  See Stoe v. Flaherty, 436 F.3d 209, 219 (3d Cir. 2006) ("[T]imeliness in this context must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed.").  Conversely, even a relatively brief delay might make state court adjudication untimely where the state action substantially affects the bankruptcy estate, or where the estate's resolution is contingent upon the state action.  Based on the particular facts of these cases, the four-factor test indicates that these

cases can be "timely adjudicated" in Illinois state court.[4] Abstention is therefore mandatory.

## II.

The District Court also concluded that, even if this case could be "timely adjudicated" in the Illinois state courts, mandatory abstention did not apply because these cases "could . . . have been commenced" in federal court. See In re Parmalat, 2011 WL 3874824, at *3 (citing 28 U.S.C. § 1334(c)(2)). It was error to consider this argument, because it had been waived, and because it was outside the scope of the mandate set forth in our previous Opinion.

It is plain that this argument was waived in the initial appeal, because it had not been raised with the District Court as a basis to avoid mandatory abstention. See, e.g., Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); see also Stoe, 436 F.3d at 219.

---

[4] The District Court did not resolve the issue of which party bears the burden of showing timely adjudication. Our previous Opinion, while noting that other courts have held to the contrary, explained that there were reasons for imposing the burden on the party opposing abstention. Parmalat, 639 F.3d at 582 (citing Younger v. Harris, 401 U.S. 37, 44 (1971)). However, because the balance of the four factors weighs in favor of abstention, we do not need to resolve this issue.

The argument was not raised on the initial appeal, and we issued a mandate that focused specifically and exclusively on the question of "timely adjudication." Parmalat, 639 F.3d at 582. The Appellees argue that the mandate reasonably can be read as allowing consideration of an alternative basis for denying mandatory abstention. We have explained that, "[t]o determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001). Here, both the "specific dictates of the mandate" and the "spirit of the mandate" focus entirely on the question of timely adjudication, with no mention of an alternative basis for denying mandatory abstention. It is not reasonable to construe the mandate as allowing alternative, dispositive bases for denying abstention to be raised for the first time on remand, particularly when the cases had been pending for years and had already been the subject of an appeal. The more reasonable reading of the mandate is that it directed the District Court to examine the issue of timely adjudication as a bar to abstention, and that alternative grounds for denying abstention that had not been raised either before the District Court or on the initial appeal were "impliedly decided" to have

-22-

been waived in the first instance.  Id.  The District Court therefore should not have entertained this argument.

**CONCLUSION**

We have considered all of the arguments of the parties.  To the extent not specifically addressed above, they are either moot or without merit.  For the reasons explained above, we **VACATE** the judgments of the District Court and **REMAND** these cases to the District Court with instructions to transfer them to the Northern District of Illinois so that they can be remanded to Illinois state court.[5]  The mandate shall issue forthwith.

---

[5] The proper procedure to remand a case subject to mandatory abstention under 28 U.S.C. § 1334(c)(2) is found in 28 U.S.C. § 1452(b).  See Covanta Onondaga Ltd. v. Onondaga Cnty. Res. Recovery Agency, 318 F.3d 392, 398-99 (2d Cir. 2003).  However, under § 1452(b), the appropriate court to remand a case to state court is the "court to which [the] claim or cause of action [was] removed."  28 U.S.C. § 1452(b).  Because the Illinois state court actions were originally removed to the United States District Court for the Northern District of Illinois, from which they were transferred to the District Court for the Southern District of New York, only the District Court for the Northern District of Illinois has the authority to remand the actions back to the Illinois state court.  Thus, on remand, the District Court for the Southern District of New York should transfer the actions to the District Court for the Northern District of Illinois, which can then remand the actions to Illinois state court.

-23-